**AFFIRM in Part, and REVERSE and REMAND;  Opinion Filed December 30, 2015.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-14-01318-CV

**JOHN TATUM AND MARY ANN TATUM, Appellants/Cross-Appellees**
**V.**
**JULIE HERSH, Appellee/Cross-Appellant**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-04185**

## OPINION

Before Justices Lang, Evans, and Whitehill
Opinion by Justice Whitehill

The Texas Citizens Participation Act[1] allows a defendant to move for dismissal of a cause of action if that claim is based on, relates to, or is in response to the defendant's exercise of an enumerated right, such as the right of free speech. In *Pickens v. Cordia*, 433 S.W.3d 179 (Tex. App.—Dallas 2014, no pet.), however, we held that a defendant who denies making the communication at issue cannot invoke that procedure.

The present case turns on whether *Pickens* applies if the defendant's motion admits participating in a conversation generally but denies making the specific relevant statements in particular. For the reasons discussed below, we conclude that *Pickens* applies to the facts before us and, thus, reverse the trial court's judgment to the extent it grants appellee's motion to dismiss

---

[1] TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015).

and awards appellee conditional appellate attorneys' fees. We affirm the judgment to the extent it denies appellee's requests for trial-level attorneys' fees and monetary sanctions.

## I. BACKGROUND

### A.    Factual Allegations.

Appellants John and Mary Ann Tatum were the plaintiffs below, and their live petition alleged the following facts:

The Tatums were Paul Tatum's parents. Paul committed suicide on May 18, 2010, hours after being involved in a car accident. A few days later, the Tatums took out a newspaper obituary that paid homage to Paul's life and suggested that his death was caused by injuries he sustained in the accident.

Meanwhile, appellee Julie Hersh had written a book about her personal history of depression and suicide attempts. In early 2010, she was attempting to gain publicity for the book. Consequently, a few days before Paul's death, she wrote a letter to the editor of the *Dallas Morning News* newspaper complaining about the newspaper's coverage of the death of a man named Ted Pillsbury. Pillsbury had committed suicide, and Hersh complained that the newspaper's coverage did not address Pillsbury's supposed mental illness.

Later, Hersh read Paul's obituary and heard from acquaintances that Paul had committed suicide.

After that, she wrote a blog post entitled "Don't Omit from the Obit," in which she encouraged people not to conceal the role that mental illness plays in causing suicide.

Less than a month after Paul's obituary, Hersh on June 14, 2010 met with *Dallas Morning News* columnist Steve Blow and "promoted Paul's death and the Obituary . . . as a news story," "incited Blow to write about suicide in obituaries," and "encouraged him to make the

Tatum tragedy public." The next day, she emailed Blow her unpublished letter to the editor and her "Don't Omit from the Obit" blog post.

On June 20, 2010, less than a month after publishing Paul's obituary, the *Dallas Morning News* published a column by Blow in which he discussed Pillsbury's death, Pillsbury's company's press release about his death, and Paul's death and obituary.[2] The column also promoted Hersh's blog. The column brought unwanted attention to the Tatums for their decision not to discuss suicide in Paul's obituary, and it caused the Tatums to suffer humiliation and embarrassment.

**B.      Procedural History.**

The Tatums sued Hersh for intentional infliction of emotional distress.[3] Hersh answered and filed a motion to dismiss under the Texas Citizens Participation Act (TCPA). Hersh's motion sought (i) dismissal of the Tatums' claims and (ii) the recovery of her attorneys' fees and sanctions against the Tatums.

The Tatums then filed a first amended petition, which remained their live pleading through final judgment, and a response to the dismissal motion. Hersh filed a reply brief, and the Tatums filed a sur-reply.

After two hearings, the trial judge signed an order dismissing the case with prejudice. The judge did not award Hersh any trial-level attorneys' fees or sanctions, but he did award Hersh conditional appellate attorneys' fees.

The Tatums appealed the judgment, and Hersh cross-appealed.

---

[2] According to evidence presented in the motion to dismiss process, the column criticized social norms that cause people not to talk openly about suicide as a cause of death. The column discussed Pillsbury's and Paul Tatum's suicides and their aftermaths as examples, and it argued that greater honesty and openness about suicide and mental illness would save lives.

[3] The Tatums also sued Blow and The Dallas Morning News, Inc. in a separate suit. That lawsuit resulted in its own appeal, *John Tatum and Mary Ann Tatum v. The Dallas Morning News, Inc. and Steve Blow*, No. 05-14-01017-CV, which is being decided by a separate opinion also issuing today.

## II. ANALYSIS

The Tatums present three appellate issues, each arguing that the trial court erred by granting Hersh's motion. We need discuss only their first issue, which is whether the trial court erred by ruling that Hersh carried her initial burden of showing that the TCPA applies to the Tatums' claims. For the reasons discussed below, we conclude that she did not do so.

### A. Standard of Review.

A TCPA movant bears the initial burden of showing by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise of" a statutorily protected right, such as the right of free speech. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b) (West 2015). We review de novo the trial court's ruling that a defendant carried its § 27.005(b) burden. *See D Magazine Partners, L.P. v. Rosenthal*, No. 05-14-00951-CV, 2015 WL 5156908, at \*5 (Tex. App.—Dallas Aug. 28, 2015, pet. filed) ("We review de novo the trial court's determinations that the parties met or failed to meet their burdens of proof under section 27.005.") (footnote omitted); *see also ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 845 (Tex. App.—Dallas 2015, pet. filed) (reviewing de novo whether movants established that challenged statements were exercises of free speech and association rights).

### B. TCPA Overview.

The TCPA is an "anti-SLAPP statute," meaning that the legislature enacted it to curb "strategic lawsuits against public participation." *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 868 (Tex. App.—Dallas 2014, no pet.). The statute's stated purpose is to encourage and protect people's First Amendment rights while also protecting other people's related rights to pursue meritorious claims for redress:

> The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and,

at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

CIV. PRAC. § 27.002. The legislature further specified that the TCPA "shall be construed liberally to effectuate its purpose and intent fully." *Id*. § 27.011(b).

The TCPA's main feature is a motion procedure that enables defendants to seek the dismissal of frivolous claims and to recover attorneys' fees and sanctions. *See id*. §§ 27.003, 27.005, 27.009(a). These features, however, are counterbalanced by providing that a defendant who files a dismissal motion that is itself frivolous or intended solely to delay can be ordered to pay the nonmovant's court costs and reasonable attorneys' fees. *Id*. § 27.009(b).

As mentioned above, the motion to dismiss movant has the initial burden of proof. *See Am. Heritage Capital*, 436 S.W.3d at 874. Specifically, § 27.005(b)(1) defines that burden as follows:

> Except as provided by Subsection (c), . . . a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of . . . the right of free speech . . . .

CIV. PRAC. § 27.005(b)(1).

If the movant carries that initial burden, the burden shifts to the claimant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. § 27.005(c). If the claimant carries this subsequent burden, the court must deny the motion unless "the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id*. § 27.005(d).

"In determining whether a legal action should be dismissed . . . , the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id*. § 27.006(a).

**C.** **Tatum Issue 1: Did the trial court err by ruling that Hersh carried her § 27.005(b) burden to show that the Tatum's suit was based on, related to, or in response to a statement by Hersh?**

The Tatums' first issue argues that Hersh failed to establish that the TCPA applied to their claims because Hersh denied making the statements on which the Tatums' pleadings are based. But, before addressing that argument, we must first consider Hersh's premise that the Tatums forfeited that argument by not raising it in the trial court.

**1.** **Did the Tatums forfeit their argument that Hersh's denial of making the statements on which the Tatums' claims are based negated Hersh's motion?**

Hersh argues that the Tatums failed to preserve their argument because they did not include it in their written (1) response to Hersh's dismissal motion, (2) sur-reply in opposition to the motion, or (3) two post-hearing letter briefs.

The Tatums, however, reply that they preserved the argument orally at the hearing on Hersh's motion to dismiss. Specifically, their attorney argued to the trial court that:

> Defendants [sic] have not once, not once, told you what they actually said. They continue to deny that they went and talked about Paul Tatum in that meeting with Mr. Blow. They continued to deny it. Continued to deny it. And every part where they reference it they call it the alleged statements. They have a preponderance burden, and that preponderance burden means you have to show that the greater weight of authority proves that you made a communication.

We agree with the Tatums. A complaint must be preserved by a timely request, objection, or motion in the trial court that:

> (A)  stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

> (B)  complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure . . . .

TEX. R. APP. P. 33.1(a)(1).

But nothing in Rule 33 requires complaints to be preserved in writing, nor do we find anything in the rules of evidence, the rules of procedure, or the TCPA imposing that requirement

–6–

in this context. *See* TEX. R. APP. P. 33.1(a); *see also Braglia v. Middleton*, No. 13-10-00101-CV, 2012 WL 664947, at \*3 (Tex. App.—Corpus Christi Mar. 1, 2012, no pet.) (mem. op.) (appellant's oral argument and continuance motion in trial court preserved error).

Because the Tatums' oral argument made the trial court aware of their argument that Hersh's denial that she talked with Blow about Paul Tatum should defeat Hersh's dismissal motion, we conclude that the Tatums preserved their argument.

### 2. Did Hersh carry her initial burden under § 27.005(b) despite her denial that she made the specific statements at issue?

#### a. Applicable Law.

Civil practice and remedies code § 27.005(b) provides that a TCPA movant must show by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the movant's exercise of a protected right. CIV. PRAC. § 27.005(b). The Tatums' argument that Hersh did not carry her § 27.005(b) burden requires us to interpret and apply that statute to the pleadings and evidence in this case based on a de novo standard of review. *See D Magazine Partners, L.P.*, 2015 WL 5156908, at \*5.

When construing a statute, we attempt to ascertain and effectuate the legislature's intent. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). We start with the plain and ordinary meaning of the statute's words. *Id*. If a statute is unambiguous, we generally enforce it according to its plain meaning. *Id*. We read the statute as a whole and interpret it so as to give effect to every part. *Id*.; *see also Phillips v. Bramlett*, 288 S.W.3d 876, 880 (Tex. 2009) ("We further try to give effect to all the words of a statute, treating none of its language as surplusage when reasonably possible.").

The TCPA defines the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." CIV. PRAC. § 27.001(3). The TCPA defines "matter of public concern" as including, among other things, issues relating to health, safety, or

community well-being.  *Id*. § 27.001(7)(A), (B).  Thus, the statute required Hersh to show that the Tatums' claims were based on, related to, or were made in response to a communication Hersh made that related to an issue of health, safety, community well-being, or some other matter of public concern.

A question that sometimes arises under the TCPA is whether a movant can carry its § 27.005(b) burden if the movant denies making the communication that the claimant bases its claim on.  We recently held that the answer is no.  *See Pickens v. Cordia*, 433 S.W.3d 179, 188 (Tex. App.—Dallas 2014, no pet.).

In *Pickens v. Cordia*, Pamela Pickens sued her brother Michael Pickens, alleging that he had sent a harmful email about Pamela to various people.  *Id*. at 181–82, 187–88.  Michael filed a TCPA motion to dismiss.  *Id*. at 182.  At the hearing, Pamela's attorney said, apparently without contradiction, that Michael had denied sending the email, which was sent under the name "Robert Barris."  *Id*. at 188.  The trial court dismissed Pamela's claim, but we reversed based on Pamela's argument that "since Michael denied sending the email, there can be no evidence the lawsuit was related to Michael's exercise of free speech and no chapter 27 basis for dismissing the claim."  *Id*.  We said, "Given that [Michael] has denied sending the email, we conclude chapter 27 does not apply to this cause of action."  *Id*.

We acknowledged the *Pickens* holding in a subsequent case.  *See Am. Heritage Capital*, 436 S.W.3d at 882 n.5 ("We recently held that a defendant could not rely on Chapter 27 as to a particular claim because his defense was that he did not publish the speech allegedly giving rise to the claim.").

And, although it held that *Pickens* was factually distinguishable, the Fort Worth Court of Appeals has said, "We agree [with *Pickens*] that a defendant who denies making any communication may not obtain dismissal by also simultaneously claiming that he was exercising

his right of free speech by making a communication." *Rauhauser v. McGibney*, No. 02-14-00215-CV, 2014 WL 6996819, at *5 (Tex. App.—Fort Worth Dec. 11, 2014, no pet.) (dismissal was proper because petition alleged that the defendant made other communications that the defendant did not deny making); *see also Jardin v. Marklund*, 431 S.W.3d 765, 773–74 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (TCPA did not apply because defendant did not make the communications made the basis of plaintiffs' claims).

Building on *Pickens*, the Fifth Circuit Court of Appeals held that a TCPA movant cannot carry its threshold burden by relying solely on the plaintiff's pleadings, even if the movant has not expressly denied making the relevant communication. *Culbertson v. Lykos*, 790 F.3d 608, 632 (5th Cir. 2015) ("Palmer has not cited any Texas case that specifically holds that a plaintiff's own allegations will by themselves satisfy a defendant's burden under the TCPA. We will not create such law.") (footnote omitted).

### b. Application of the Law to the Facts.

### (1) What statements are the Tatums' claims based on?

We first examine the Tatums' live pleading to see what communications they based their claims on.[4]

The Tatums' live pleading alleges these facts:

> Shortly [after Paul's death], Defendant—with full knowledge of Plaintiffs' special vulnerability in a time of bereavement—went to Steve Blow ("Blow"), a columnist for *The Dallas Morning News* (the "DMN"), and encouraged him to write a column that would draw attention to Hersh's recent blog that called for a discussion of mental illness in suicide victims' obituaries. Hersh also encouraged Blow to use Plaintiffs' choice of wording in the Obituary as a demonstrative and a specific example of the alleged problem discussed in her blog. Defendant's actions culminated in Blow authoring a column that appeared in the DMN on

---

[4] At least two appellate courts have said that a reviewing court should view the pleadings and evidence in the light most favorable to the nonmovant when deciding whether the movant carried its initial burden under § 27.005(b). *See Sloat v. Rathbun*, No. 03-14-00199-CV, 2015 WL 6830927, at *3 (Tex. App.—Austin Nov. 6, 2015, no pet. h.); *Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 214 (Tex. App.—Houston [1st Dist.] 2014, no pet.). We need not decide whether this is correct because the Tatums prevail even under our neutral, plain-language review of their live pleading.

June 20, 2010—Father's Day—which promoted Hersh's blog and brought unwanted attention to the Plaintiffs for their decision not to discuss suicide in the Obituary (the "Column").

. . . .

Plaintiffs' claims . . . turn simply on whether Hersh's actions in exploiting the tragedy of a grieving family for her personal gain by encouraging a third party to criticize the Plaintiffs' choice of wording in the Obituary constitute extreme and outrageous conduct.

. . . .

Hersh promoted Paul's death and the Obituary to Blow at the DMN as "news" only three weeks after Paul's funeral on Monday, June 14, 2010.

. . . .

Hersh's meeting, emailing of her blog, and "stoking up" of Blow to write about "the problem of glossing over suicide in obituaries" **took place immediately before the Column's publication**.

. . . .

As a result [of] Hersh's actions in encouraging Blow to publish the Column and publicizing their private tragedy, the Tatums suffered sadness, anxiety, worry, . . . and feelings of being violated by the sudden, unexpected public criticism. . . .

. . . .

Hersh clearly viewed Paul's death and Obituary as an opportunity for self-promotion through publicity and her deliberate and persistent efforts were the motive force behind Blow's Column.

(Bold in original.)

The Tatums' petition then contains a section under the heading "Count 1: Intentional Infliction of Emotional Distress." That section begins with the following passage:

As discussed in detail above, *Defendant, with full knowledge of the special vulnerability of Plaintiffs after having lost their son, went to Blow and encouraged him to make the Tatum tragedy public*. The act of using a family's private tragedy for one's own personal publicity by identifying them (i.e., feeding the "news story" to Blow so as to garner publicity for herself) was so extreme and outrageous that it shocks the conscience.

–10–

(Emphasis added.) Their live pleading, however, also alleged that Hersh spoke to Blow about suicide and obituaries in general.

Based on the above discussion of the Tatums' live petition, we conclude that they based their intentional infliction claims on statements Hersh allegedly made to Blow that (i) were about Paul's death and obituary and (ii) encouraged Blow to write about those facts in a critical way.

### (2) How does *Pickens* apply to the facts of this case?

Next, we review Hersh's dismissal motion, the responses and replies, and the evidence filed by both sides.

Hersh's dismissal motion consistently denied that she made the relevant statements:

- "[T]he evidence conclusively establishes that Ms. Hersh did not make the statements the Tatums allege."

- "In this case, the uncontroverted evidence conclusively establishes that *Ms. Hersh did not make the statements the Tatums have attributed to her*."

- "The record evidence conclusively establishes that Ms. Hersh did not 'feed' a news story to Mr. Blow about the Tatums."

- "While both Mr. Blow and Ms. Hersh have acknowledged discussing Ms. Hersh's blog post entitled 'Don't Omit From the Obit,' their uncontroverted deposition testimony conclusively establishes that *Ms. Hersh never mentioned the Tatums to Mr. Blow before his column was published, or ever accused them of 'lying.'*"

- "Far from providing clear and specific evidence that Ms. Hersh made the statements the Tatums attribute to her, the testimony of the only two witnesses present during their discussion establishes that, at most, Mr. Blow, *and not Ms. Hersh*, referred to the obituary of Paul Tatum without using Paul Tatum's name."

(Emphases added.)

Furthermore Hersh's reply brief also denies that she made the relevant statements:

- "The Tatums allege, *falsely*, that Ms. Hersh also referred Mr. Blow to their son's then-recent obituary, which attributed his death to an automobile accident and did not disclose the fact of his suicide."

(Emphasis added, footnote omitted.)

–11–

Moreover, the evidence also contains testimony by both Hersh and Blow about the substance of the relevant conversation. Both Hersh and the Tatums filed excerpts from Hersh's and Blow's depositions in the Tatums' separate lawsuit against Blow and The Dallas Morning News, Inc.[5] Blow testified that he called Hersh before drafting the column and that they talked about the column's subject matter. He also testified that he thought he referred to two recent cases of suicide during that conversation, but he did not believe that he mentioned any specific names or the specifics of Paul's death. Blow did not say that Hersh told him about Paul's suicide or that Hersh encouraged him to criticize Paul's obituary. In fact, Blow said that he learned about Paul's suicide from sources within the *Dallas Morning News*.

Additionally, Hersh testified that she met with Blow in person at his office. She also said that she and Blow "both talked about this issue of, you know, the secrecy about suicide," and that she told Blow that she was in the process of writing a blog about a different case of suicide. Hersh testified that Blow told her there had been an obituary that was not forthcoming about the cause of death, but no names were mentioned. Hersh did not say that she told Blow about Paul's suicide or that she encouraged him to criticize Paul's obituary.

In sum, Hersh's motion papers, in which the statute required her to prove by a preponderance of the evidence that the Tatums' suit is based on, relates to, or is in response to Hersh's exercise of the right of free speech, deny and offer evidence disproving that she made those very statements on which her motion's success first hinges.

Based on the above and for purposes of Hersh's motion to dismiss, we conclude that Hersh admitted talking with Blow about suicide and secrecy in general, but she denied making

---

[5] For more information about that lawsuit, see footnote 3 *supra*.

the alleged statements that the Tatums based their claims on—statements about Paul's death and obituary that encouraged Blow to write critically about those facts.[6]

Finally, we apply *Pickens* to these facts. The Tatums argue that *Pickens* is controlling. Hersh, however, argues that *Pickens* is distinguishable because, unlike the defendant in *Pickens*, Hersh does not deny that she made some communications to Blow. Specifically, she does not deny that they discussed suicide, obituaries, and her blog post on those topics. According to Hersh, "there is no dispute that this communication is the basis of the Tatums' claims."

When a defendant denies making the relevant statements, as Hersh does here, her dismissal motion necessarily denies that the claim is based on, relates to, or is in response to "the party's exercise of . . . the right of free speech." CIV. PRAC. § 27.005(b). In essence, Hersh asks us to rewrite § 27.005(b) to require a motion to dismiss to show that the claim is based on, relates to, or is in response to the defendant's *alleged* exercise of a protected right. But "[a] court may not judicially amend a statute by adding words that are not contained in the language of the statute." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam).

Based on *Pickens* and a de novo review of the record before us, we are not persuaded that, for purposes of her TCPA motion to dismiss, Hersh carried her burden of showing that she made the statements on which the Tatums' claims are based.[7] Indeed, the record in this case demonstrates that Hersh's denial that she made the relevant statements is even more forceful than the denial in *Pickens*.

Accordingly, for the above reasons, the trial court erred by granting Hersh's dismissal motion.

---

[6] Again, two appellate courts have said that a reviewing court should view the pleadings and evidence in the light most favorable to the nonmovant in a § 27.005(b) analysis. *See Sloat*, 2015 WL 6830927, at *3; *Cheniere Energy, Inc.*, 449 S.W.3d at 214. We need not decide whether this is correct because the Tatums prevail even under a neutral review of the evidence.

[7] This conclusion is for purposes of this appeal only, and should not be construed as a ruling either way on the ultimate resolution of that question.

–13–

**3.    Conclusion.**

We thus sustain the Tatums' first appellate issue and need not address their remaining issues.

**D.    Hersh's Cross-Appeal.**

Hersh's cross-appeal argues that the trial court erred by failing to award her attorneys' fees she incurred for the proceedings in the trial court and by failing to award her any sanctions. Because Hersh was not entitled to dismissal of the Tatums' claims, she also was not entitled to recover attorneys' fees or sanctions. *See* CIV. PRAC. § 27.009(a) (fees and sanctions are contingent on dismissal of a legal action). Accordingly, we reject her arguments that the trial court erred by failing to award her any sanctions or trial-level attorneys' fees and affirm the denial of those sanctions and fees.

## III. CONCLUSION

We affirm the trial court's judgment to the extent it denies appellee's requests for trial-level attorneys' fees and sanctions. We reverse the remainder of the judgment and remand the case for further proceedings consistent with this opinion.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE

141318F.P05

–14–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JOHN TATUM AND MARY ANN TATUM, Appellants/Cross-Appellees

No. 05-14-01318-CV     V.

JULIE HERSH, Appellee/Cross-Appellant

On Appeal from the 68th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-14-04185.
Opinion delivered by Justice Whitehill.
Justices Lang and Evans participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the judgment of the trial court to the extent it denies appellee/cross-appellant Julie Hersh's requests for trial-level attorneys' fees and sanctions. The remainder of the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings.

It is **ORDERED** that appellants/cross-appellees John Tatum and Mary Ann Tatum recover their costs of this appeal from appellee/cross-appellant Julie Hersh.

Judgment entered this 30th day of December, 2015.