**AFFIRM; and Opinion Filed June 28, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-01162-CV

**JOHN DAVID ADAMS, Appellant**
**V.**
**STARSIDE CUSTOM BUILDERS, LLC, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-01104-2015**

## MEMORANDUM OPINION

Before Justices Fillmore, Stoddart, and O'Neill[1]
Opinion by Justice Fillmore

Starside Custom Builder, LLC sued John David Adams asserting, among other causes of action, a claim for defamation. Adams filed a supplemental motion under the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015) (TCPA), requesting that the trial court dismiss Starside's defamation claim. The trial court failed to rule on the supplemental motion within the time period set out in the statute, and the supplemental motion was denied by operation of law. *Id.* §§ 27.005(a), 27.008(a). Adams filed this interlocutory appeal, challenging the denial of the supplemental motion. We conclude Adams failed to establish the TCPA applies to Starside's defamation claim and affirm the denial of the supplemental motion to dismiss.

---

[1] The Hon. Michael J. O'Neill, Justice, Assigned.

**Background**

Bentley Premier Builders, LLC, which was owned by Sandy Golgart and Phillip Pourchot, developed and constructed homes in the Normandy Estates subdivision in Plano, Texas. Adams and his wife own a home in the subdivision. On August 6, 2013, Bentley filed for bankruptcy protection. Adams and several other homeowners subsequently filed a criminal complaint against Golgart for signing false "all bills paid" affidavits concerning their homes.

During Bentley's bankruptcy proceedings, Adams published an internet blog regarding his experiences with Bentley. The home page of the blog contains an image of Bentley's website superimposed with the statement that Bentley had "made life miserable" for builders, subcontractors, and families. Across the bottom of the page were tabs labeled "unpaid creditors," "commingled funds," "contract fraud/felony investigation," and "undisclosed felony conviction."[2] The blog page invited the reader to contact Golgart's and Pourchot's attorneys for "their rebuttal to these allegations." The bankruptcy court ultimately confirmed a plan of reorganization for Bentley proposed by Pourchot. Bentley was then renamed Starside. Pourchot is Starside's chief executive officer.

Behind Adams's home is a creek and a parcel of land owned by Starside and designated as a "common area" of the subdivision. Adams desired to purchase the common area to provide more privacy for his family and believed Starside had agreed in principle to sell him the land if the City approved the "replat." However, in late 2014, the Normandy Estates Homeowners Association (the HOA), with funds provided by Starside, began performing landscaping work in the common area, including the removal of small trees, brush, and undergrowth. Adams and his wife strongly objected to the landscaping work being done in the common area.

---

[2] Information, if any, that might have been accessed through these tabs is not in the record.

On March 15, 2015, Dr. Kim Castleberry, the president of the HOA, and his wife, were marking trees in the common area that were to be removed. Adams sent an email to Starside's attorney and a number of text messages to members of the board of the HOA threatening to shoot anyone who cut down trees in the common area. Pourchot contacted the Plano police department the following day. The police officer who spoke to Adams told Pourchot that Adams claimed he owned the common area.

On March 18, 2015, at 10:18 a.m., Starside sent an email to "Normandy Estates Owners" attaching a letter and "follow up attachments" concerning "an ongoing situation in the neighborhood." The information attached to the email is not in the appellate record and the email does not reveal the recipients. Adams sent a response to the email at 11:36 a.m. that, although addressed to "HOW [sic] members," appears to have been sent only to Cindy Warren, who was an employee of Starside, Pourchot, Castleberry, and Marc Powell, a member of the board of the HOA. In the response, Adams stated, as relevant to this appeal:

> First, I would like to apologize that this had to become public. It is a situation that frustrates our family very much, but we have tried to keep the rest of the neighborhood our [sic] of it, and have had no private (other homeowners) conversations regarding this since the first incident where the HOA clear cut land, and did not follow city ordinances on tree preservation. . . .

> In order to avoid making claims that can not [sic] be substantiated, I will attempt to just provide verifiable facts. If you are interested in this, you can verify the facts for yourself, and I think it will give you a clear understanding that the issues we had with Sandy Golgart have continued on now that Phill is completely in control. Starside has made claims in their email that they can not [sic] substantiate. This does not matter to them though.

Adams then set out a recitation of his views about the dispute over the common area.

Starside sued Adams and his wife on March 20, 2015, asserting claims against Adams for threat of imminent bodily injury and business disparagement. Starside also sought injunctive relief as well as a declaratory judgment stating that Starside owned the common area. In its claim for business disparagement, Starside did not set out any specific conduct by Adams that it

alleged caused it harm, stating generally that Adams had "maliciously made false and disparaging statements regarding [Starside], about CEO Pourchot's character and as a business person."

Adams moved to dismiss Starside's business disparagement claim pursuant to the TCPA. In his motion, Adams alleged that Starside's business disparagement claim was based on his: (1) expressed intent to protest Starside's services at the front entrance of the HOA; (2) expressed intent to protest Starside's services in yard signs on his lawn; (3) filing a police report against an individual affiliated with Starside; (4) allegedly posting a blog about a former business partner of Pourchot; (5) threatening to send a text message asking for feedback regarding Starside's services; and (6) statements to law enforcement after Starside contacted them about the "communications made the basis of this suit." Adams asserted that Starside filed the suit to prevent him "from exercising his constitutional rights of free speech and to petition the government." He argued he was entitled to the dismissal of the business disparagement claim because he had a "constitutional right to voice his opinions regarding [Starside's] services and officers of the HOA, of which he is a member," and had a "privilege and right to interact with law enforcement, including filing a police report against those individual(s) [he] believes might have committed a crime."

Starside filed an amended petition, dropping its claim for business disparagement and adding a claim for defamation that was based on the homepage of Adams's 2014 blog and Adams's March 18, 2015 email. As to the blog, Starside asserted the page included Golgart's and Pourchot's names and contained a tab entitled "undisclosed felony conviction." Starside alleged that, because this tab contained a picture of a man's handcuffed wrists, it "appears to say" Pourchot has an undisclosed felony conviction. Starside alleged the March 18, 2015 email contained the defamatory statements that "the issues we had with Sandy Golgart have continued

on now that Phill is completely in control," and "land was cleared without getting the appropriate permit from the City." Starside contended these statements were defamatory because they tended to injure its reputation, impeached its honesty and integrity, and exposed it to contempt, hatred, and financial injury. Starside also alleged the statements in the March 18, 2015 email were defamatory per se because they suggested it was guilty of violating City codes and engaging in felony criminal activity.

Adams filed a three-page supplemental motion to dismiss Starside's defamation claim. The supplemental motion incorporated Adams's original motion to dismiss and briefly addressed the elements of a claim for defamation. It did not, however, address how the specific statements relied upon by Starside to support its defamation claim fell within the purview of the TCPA.

The trial court heard Adams's motion to dismiss on August 5, 2015. The trial court found that Starside attempted to avoid the motion to dismiss by "nonsuiting [its] claim for business disparagement in favor of a claim for defamation." The trial court granted the motion; dismissed Starside's business disparagement claim with prejudice; awarded Adams court costs, attorneys' fees, and other expenses incurred in defending the claim for business disparagement, in an amount to be determined at a later date; and ordered Starside should be sanctioned in an amount, to be determined at a later date, sufficient to deter it from bringing a similar action in the future.

The trial court heard Adams's supplemental motion to dismiss on August 14, 2015. The trial court failed to rule on Adams's supplemental motion within thirty days of the hearing, and the supplemental motion was denied by operation of law. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.005(a), 27.008(a). Adams's brought this interlocutory appeal from the denial of his supplemental motion to dismiss. *See id*. § 51.014(a)(12) (West Supp. 2015).

**Analysis**

Adams contends the trial court erred by denying his supplemental motion to dismiss because Starside's defamation claim is subject to the TCPA and Starside failed to present clear and specific evidence of each element of the claim.

The TCPA's purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *see also Tervita, LLC v. Sutterfield*, 482 S.W.3d 280, 282 (Tex. App.—Dallas 2015, pet. denied). To that end, the TCPA provides a procedure for the expedited dismissal of retaliatory lawsuits that seek to intimidate or silence citizens on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a); *Andrews Cty. v. Sierra Club*, 463 S.W.3d 867, 867 (Tex. 2015) (per curiam) ("When a plaintiff's claim implicates a defendant's valid exercise of First Amendment rights, the [TCPA] allows the defendant to move for dismissal.").

To obtain dismissal under the TCPA, the movant bears the initial burden of showing by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise of" a statutorily protected right. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *see also In re Lipsky*, 460 S.W.3d at 586. If the movant carries its initial burden, the claimant must then establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see also In re Lipsky*, 460 S.W.3d at 587. But the trial court shall dismiss a legal action against the movant if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d); *see also*

*Trevita, LLC*, 482 S.W.3d at 282. When determining whether a legal action should be dismissed under the TCPA, the court must consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a); *D Magazine Partners, L.P. v. Rosenthal*, 475 S.W.3d 470, 479 (Tex. App.—Dallas 2015, pet. granted).

We review de novo whether the parties met their burdens of proof under section 27.005. *Levatino v. Apple Tree Café Touring, Inc.*, No. 05-15-00614-CV, 2016 WL 929221, at *2 (Tex. App.—Dallas Mar. 11, 2016, pet. filed); *Serafine v. Blunt* 466 S.W.3d 352, 359 (Tex. App.— Austin 2015, no pet.). In doing so, we focus on the extent to which the factual bases of the challenged "legal action" constitute "expression" within the statutory definitions of the "'exercise of' the 'right of free speech,' 'right of association,' or 'right to petition.'" *Sloat v. Rathbun*, No. 03-14-00199-CV, 2015 WL 6830927, at *2 (Tex. App.—Austin Nov. 6, 2015, pet. filed). We "do not blindly accept" attempts by the movant to characterize the plaintiff's claims as implicating protected expression. *Id.* at *3. Rather, we view the pleadings in the light most favorable to the plaintiff; *i.e.*, favoring the conclusion that the claims are not predicated on protected expression. *Id.* Further, any activities by the movant that are not a factual predicate for the plaintiff's claim are not pertinent to the inquiry. *Id.*

Adams argues he was exercising his right to free speech in both the 2014 blog and the March 18, 2015 email and, therefore, established his statements are entitled to protection under the TCPA. For a communication to qualify for protection under the TCPA as the "exercise of the right of free speech" the communication must be "made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3); *Lippincott v. Whisenhunt*, 462

S.W.3d 507, 509 (Tex. 2015) (per curiam).[3] A "matter of public concern" includes an issue related to health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7).

Adams asserts the statements on which Starside's defamation claim are based related to Starside's services in the marketplace and, therefore, are protected by the TCPA.[4] However, the complained-about statements do not mention Starside at all, much less comment on its services in the marketplace. *See Lahijani v. Malifera Partners, LLC*, No. 01-14-01025-CV, 2015 WL 6692197, at *4 (Tex. App.—Houston [1st Dist.] Nov. 3, 2015, no pet.) (mem. op.) (statements that did not mention service in marketplace did not relate to matter of public concern); *Bacharach v. Garcia*, No. 13-14-00693-CV, 2015 WL 5136192, at *3 (Tex. App.—Corpus Christi Aug. 31, 2015, no pet.) (mem. op.) ("The public-concern argument that [movant] brings to this Court regarding statements she posted about [a third-party] does not support her motion to dismiss [plaintiff's] lawsuit."). Rather, the statements in the March 18, 2015 email generally compare Pourchot to Golgart, without explaining the basis for that comparison, and accuse the HOA, not Starside, of cutting trees in the common area without a permit from the City. The blog page refers to Bentley, not Starside, and lists Pourchot's and Golgart's attorneys as people to

---

[3] A communication "includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). It is undisputed that Adams's email and blog page constitute communications under the TCPA.

[4] Adams contends on appeal that his statements also related to community well-being of the other homeowners in Normandy Estates. However, in his motion to dismiss, that was incorporated into the supplemental motion, Adams argued only that the TCPA applied because he had a constitutional right to speak about Starside's services and to interact with law enforcement. During the hearing on the supplemental motion to dismiss, Adams stated:

> But the definition under 27.001 includes environmental, economic, or community wellbeing. It also includes a good[,] product or service in the marketplace. And it appears that the cases consistent with the statute says [sic] that this is to be construed literally [sic], and the cases seem to say that if – if you saw something in the marketplace, your goods or services, that is a public concern. So that's how we directly get that into place.

Adams did not argue in either his motion, supplemental motion, or during the hearing that the complained-of statements fell within the TCPA because they related to the community well-being of the other homeowners in Normandy Estates. Accordingly, he failed to preserve that argument for appeal. *See* TEX. R. APP. P. 33.1(a)(1); *Lahijani v. Melifera Partners, LLC*, No. 01-14-01025-CV, 2015 WL 6692197, at *3 (Tex. App.—Houston [1st Dist.] Nov. 3, 2015, no pet.) (mem. op.); *see also Tatum v. Hersh*, No. 05-14-01318-CV, 2015 WL 9583494, at *3–4 (Tex. App.—Dallas Dec. 30, 2015, pet. filed).

contact for a rebuttal. The blog page does not describe any relationship Pourchot or Golgart had with Bentley. Further, even considering Starside's argument that the picture of a man's handcuffed wrists on the tab labeled "undisclosed felony conviction" could be construed as accusing Pourchot of criminal activity, that accusation is directed toward Pourchot, not Starside's services in the marketplace.

We conclude Adams failed to establish by a preponderance of the evidence that the statements forming the basis of Starside's defamation claim were an exercise of his right to free speech as defined by the TCPA. *See ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 846 (Tex. App.—Dallas 2015, pet. filed) (because communications did not relate to matter of public concern, movants failed to establish lawsuit was based on exercise of right to free speech); *Sloat*, 2015 WL 6830927, at *7–8. Because Adams failed to meet his burden to show the TCPA applies to Starside's defamation claim, the trial court did not err by denying Adams's supplemental motion to dismiss. *See Combined Law Enforcement Ass'ns of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *5 (Tex. App.—Austin Jan. 31, 2014, pet. denied) (mem. op.). We resolve Adams's issue against him and affirm the trial court's denial of the supplemental motion.[5]

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

151162F.P05

---

[5] Because Adams failed to carry his initial burden of establishing the TCPA applies to Starside's defamation claim, we need not address his argument that Starside failed to establish by clear and specific evidence a prima facie case for each element of the claim. *See* TEX. R. APP. P. 47.1; *Sloat*, 2015 WL 6830927, at *8; *Combined Law Enforcement Ass'ns of Tex.* 2014 WL 411672, at *4–5.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN DAVID ADAMS, Appellant

No. 05-15-01162-CV        V.

STARSIDE CUSTOM BUILDERS, LLC,
Appellee

On Appeal from the 416th Judicial District
Court, Collin County, Texas,
Trial Court Cause No. 416-01104-2015.
Opinion delivered by Justice Fillmore,
Justices Stoddart and O'Neill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Starside Custom Builders, LLC recover its costs of this appeal from appellant John David Adams.

Judgment entered this 28th day of June, 2016.