**DISSENT and Opinion Filed September 5, 2019**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-17-00973-CV**

**RIGGS & RAY, P.C., Appellant**
**V.**
**STATE FAIR OF TEXAS, Appellee**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-16070**

## DISSENTING OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Dissenting Opinion by Justice Whitehill

The TCPA authorizes a multi-step motion to dismiss certain legal proceedings. The first step in that process is to determine whether that legal action is based on, relates to, or is in response to a party's communication made while exercising that party's statutorily defined rights to free speech, petition, or associate. The right to petition includes a communication in or pertaining to a judicial proceeding, like a lawsuit; and the right to free speech includes communications relating to a government, like the City of Dallas.

Although undisputed facts establish that R&R's claims against SFT in this legal action are based on, relate to, or are in response to SFT communications that (i) were made in a lawsuit and (ii) concern a matter of City of Dallas government, the majority opinion holds that SFT did not carry its TCPA step one burden and avoids addressing the merits of R&R's claim in step two of

the TCPA process.  Because plain, unambiguous statutory text compels a different result, I disagree.

## I.  THE LAW

As always, we start with the statutory text's plain meaning.  *See Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015).  If the statute is unambiguous and yields only one interpretation, as it does here, the plain meaning ends the inquiry.  *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013).  That's the law we must follow:

> When construing a statute, our chief objective is effectuating the Legislature's intent, and ordinarily, the truest manifestation of what lawmakers intended is what they enacted.  This voted-on language is what constitutes the law, and when a statute's words are unambiguous and yield but one interpretation, "the judge's inquiry is at an end."  We give such statutes their plain meaning without resort to rules of construction or extrinsic aids.

*Id.* (footnotes omitted); *accord Brazos Elec. Power Coop., Inc. v. Tex. Comm'n on Envtl. Quality*, 576 S.W.3d 374, 383–84 (Tex. 2019).[1]

"[W]e view the pleadings in the light most favorable to the plaintiff; *i.e.*, favoring the conclusion that the claims are not predicated on protected expression."  *Adams v. Starside Custom Builders, LLC*, 545 S.W.3d 572, 578 (Tex. App.—Dallas 2016), *rev'd on other grounds*, 547 S.W.3d 890 (Tex. 2018).  Nevertheless, our ultimate standard of review for whether a movant carried its step one burden is de novo.  *See Dallas Morning News, Inc. v. Hall*, No. 17-0637, 2019 WL 2063576, at *5 (Tex. May 10, 2019).

A TCPA dismissal movant must show "by a preponderance of the evidence that the [nonmovant's] legal action is based on, relates to, or is in response to" the movant's exercise of a statutorily defined and protected right to petition, speak freely, or associate.  TEX. CIV. PRAC. & REM. CODE § 27.005(b).

---

[1] Fundamental to those established legal principles is the concept that holding legislators accountable to the words they vote on is critical to our democratically elected representative form of government and is integral to the separation of powers doctrine enshrined in our constitutions.  It is our job to decide specific cases and controversies based on the words the legislators use and not on our own view of what would be better policy.

A petition's factual allegations are the best evidence of what that lawsuit is based on, relates to, or is in response to:

> As we have observed, "the plaintiff's petition . . ., as so often has been said, is the 'best and all-sufficient evidence of the nature of the action.'" The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations. Section 27.005(b)'s requirement that a defendant moving for dismissal show the basis of a legal action "by a preponderance of the evidence" must be read in harmony with Section 27.006(a) rather than in conflict. When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more.

*Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (footnotes omitted).

By its plain text, § 27.005(b) requires that there be a communication that exercises a protected right and an ensuing legal action that is based on, relates to, or is in response to that communication. That relationship between SFT's judicial communications and R&R's ensuing legal action exists here in droves.

To the point, this case involves both the TCPA rights to petition and speech in relation to a matter of public concern. The TCPA right to petition includes "a communication in or pertaining to . . . a judicial proceeding." *Id*. § 27.001(4)(A)(i). The TCPA defines "matters of public concern" as including "the government[.]" *Id*. § 27.001(7)(C). The statute further defines "communication" as "includ[ing] the making or submitting of a statement or document *in any form or medium*, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1) (emphasis added).

The predicate communication here is SFT's thrice judicially communicated (right to petition) statement that it is not required to provide information to R&R regarding the City of Dallas's financial relations with SFT (right of free speech regarding a matter of public concern).

## II.  APPLYING THE LAW TO THE FACTS

### A.    Is there a connection between SFT's communications and R&R's legal action?

Yes, it is not a mere coincidence that R&R's lawsuit against SFT temporally follows SFT's communications regarding its relationship with the City of Dallas.

As an initial matter, in applying the TCPA's step one based on, relates to, or in response to test, we must distinguish between (i) the plaintiff's relief sought and (ii) what prompted the plaintiff to seek that relief when it filed the particular legal action. For example, in a defamation case, the plaintiff's requested relief will be for damages of some sort, but a defamatory communication will be the catalyst that prompts the suit.[2]

The same scenario exists here: Although the ultimate relief R&R seeks is the judicially compelled delivery of documents relating to the City of Dallas's financial relationship with SFT (which is undeniably a matter of public concern, *see* TEX. CIV. PRAC. & REM. CODE § 27.001(7)(C)), it is beyond peradventure that it is SFT's (three) judicial communications regarding that subject that precipitated the current suit and the ensuing TCPA dismissal motion.

That is, SFT's judicial communications satisfy two out of three statutorily defined protected rights the exercise of which triggers the TCPA's first step analysis. Specifically, R&R's current legal action (i) is based on, responds to, or relates to SFT's judicial communications regarding government finances and (ii) covers both the right to petition and free speech bases.

SFT communicated its position regarding R&R's claimed right to government information in two different declaratory judgment petitions and a nonsuit motion that explained SFT was nonsuiting its declaratory judgment action because the supreme court's holding in *Greater Houston* settled the dispute in SFT's favor. Had SFT not filed that nonsuit motion, the issue in the current case would have reached some resolution and the present case would not have been filed. But SFT made those communications in and pertaining to a judicial proceeding, and R&R responded by suing SFT because of those communications.

---

[2] But the precipitating communication need not itself be illegal or subject the speaker to liability. *See Damonte v. Hallmark Fin. Servs., Inc.*, No. 05-18-00874-CV, 2019 WL 3059884, at *5 (Tex. App.—Dallas July 12, 2019, no pet.) (mem. op.) (Whitehill, J., concurring). Nonetheless, in this case it is SFT's communicated position that R&R is not entitled to the requested government information that exposes SFT to potential liability to R&R's declaratory judgment and statutory mandamus claims in this case.

**B.     R&R's legal action is based on, relates to, and is in response to SFT's original and amended petitions and nonsuit motion, which were exercises of its right to petition and free speech.**

        **1.     SFT's original and amended petitions and nonsuit motion in the first suit were exercises of the right to petition.**

R&R's petition in the present case alleges that, in response to R&R's letter requesting public information from SFT under the TPIA, SFT responded (in part) by filing a petition that requested "a declaratory judgment that it was not a governmental body subject to the Texas Public Information Act." It later filed an amended petition stating to that same effect. Those petitions were communications in or pertaining to a judicial proceeding, so they were literally protected exercises of SFT's right to petition. CIV. PRAC. § 27.001(4)(A)(i). Similarly, SFT's nonsuit of its declaratory judgment action was also a communication in or pertaining to a judicial proceeding. So it too was an exercise of the right to petition.

The majority opinion, however, declines to decide whether SFT's declaratory judgment action was a "judicial proceeding" for TCPA purposes, suggesting that one of our prior opinions raises doubt on the subject. *See Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724 (Tex. App.—Dallas 2016, pet. denied). But *Levatino* held that a pre-suit demand letter was not a communication that pertained to a judicial proceeding because it was pre-suit; thus, no judicial proceeding existed. *Id.* at 728–29. Here, by contrast, SFT's declaratory judgment action was an existing judicial proceeding, and all papers filed in that action were communications in and pertaining to that existing judicial proceeding.

        **2.     SFT's original and amended petitions and nonsuit motion in the first suit were also exercises of the right of free speech.**

Moreover, any communication made in connection with a matter of public concern is an exercise of the right of free speech. CIV. PRAC. § 27.001(3). This requirement is satisfied even if the connection to a matter of public concern is merely tangential. *See ExxonMobil Pipeline Co. v.*

*Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (per curiam). But the connection here is about as tangential as an arrow in the bullseye. The TCPA includes "the government" in its nonexclusive list of matters of public concern. CIV. PRAC. § 27.001(7)(C). Because R&R alleges that SFT is a governmental body and that the requested documents concern SFT's business relationship with the City of Dallas, both R&R's request and SFT's responses relate to "the government" and thus to a matter of public concern. So SFT's communications were exercises of the right of free speech.

### 3. SFT showed the required nexus between R&R's lawsuit and SFT's earlier petitions and nonsuit.

The majority opinion concludes that SFT failed to show the required nexus between R&R's claims and SFT's exercises of protected rights, holding that R&R's claims are not factually predicated on SFT's filings in the prior lawsuit. I disagree for two reasons: (i) R&R's claims on their face are factually predicated on SFT's prior declaratory judgment petitions and nonsuit motion and (ii) R&R's claims are based on, related to, or in response to the same petition and nonsuit.

### a. R&R's claims are predicated on SFT's prior declaratory judgment petitions and nonsuit motion.

The majority opinion concludes that R&R's claims aren't factually predicated on SFT's filings in the prior case because R&R is suing about SFT's noncompliance with R&R's document request and not over the judicial filings through which SFT expressed its noncompliance.

I disagree because SFT's noncompliance and its judicial filings stating its refusal to comply are one and the same. SFT could have communicated its noncompliance in two different ways:

First, it could have simply ignored R&R and hoped it would give up. Had SFT chosen that route and R&R then sued, the TCPA would not apply because the TCPA does not apply to silence. *Krasnicki v. Tactical Entm't, LLC*, No. 05-18-00463-CV, 2019 WL 2136155, at *4 (Tex. App.—Dallas May 16, 2019, pet. denied). Although in this hypothetical there was a silent communication

–6–

regarding a matter of public concern, it was not an affirmative communication as we held in *Krasnicki* the TCPA requires to trigger its coverage. For example, if A asks B to borrow B's car for an emergency and B simply turns around and walks away never to be seen or heard from again without saying anything, B's "no" answer is unambiguously communicated. But that communication may not meet the *Krasnicki* test, and the TCPA would not apply if A sued B for some reason.

Or, SFT could affirmatively communicate its intent not to comply. Here, it did so in declaratory judgment petitions that were exercises of the TCPA rights to petition and free speech. Then it effectively declared victory and nonsuited the declaratory judgment action, claiming in its nonsuit filing that a recent Texas Supreme Court case vindicated its position and made the declaratory judgment action unnecessary.

In short, SFT's declaratory judgment filings told R&R at least three times that SFT would not comply with R&R's document request. R&R filed this lawsuit to get a declaratory judgment saying that SFT must comply. Is R&R's lawsuit "based on" SFT's three judicial statements that it wouldn't voluntarily comply? Yes—SFT's communications that it wouldn't voluntarily comply are the basis of R&R's current requests for mandamus and declaratory relief.

But that is not all there is on this point. R&R's petition here affirmatively establishes the "based on" relationship between SFT's communications in its first suit filings and R&R's new lawsuit:

> On October 17, 2016, the 101st Court signed an order of nonsuit dismissing SFT's declaratory judgment action without prejudice. *Because* the court of appeals has already determined that the applicability of the TPIA to SFT constitutes a justiciable controversy and invokes subject matter jurisdiction under the DJA, *R&R now brings* this suit for mandamus and declaratory relief.
>
> . . . .
>
> R&R seeks the remedy of a petition for mandamus for SFP's refusal to produce the requested public information as required by the Texas Public Information Act.

–7–

(Emphasis added.)

Accordingly, the trial court correctly ruled that step one is satisfied because R&R's claims are based on SFT's exercises of the TCPA right to petition and free speech.

>    **b.    R&R's claims are also related to or in response to SFT's prior declaratory judgment petitions and nonsuit motion.**

Alternatively, and even if § 27.005(b)'s "based on" prong somehow were not satisfied here, the "relates to" and "in response to" prongs are satisfied. The majority opinion doesn't acknowledge that these prongs exist, effectively striking them from the TCPA as follows:

> [A] court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on~~, relates to, or is in response to~~ the party's exercise of [a protected right].

CIV. PRAC. § 27.005(b). Narrowing the TCPA's scope is the legislature's job—not the courts' job.[3] *See Coleman*, 512 S.W.3d at 900–01 (applying TCPA's broad language as written).

If we give effect to the "relates to" and "in response to" prongs, we must conclude that SFT satisfied step one in this case. Specifically, the record shows that R&R's legal action relates to and was filed in response to the fact of SFT's declaratory judgment petitions and its nonsuit motion. And the record also shows that R&R's suit is in response to or relates to the unmistakable message that SFT directly or indirectly communicated in those pleadings—SFT declines R&R's request, because SFT is not a government body subject to the TPIA.

The inescapable conclusion—which the trial court correctly drew—is that SFT satisfied step one because R&R's current legal action "relates to, or [is] in response to," SFT's statements in the first case. Thus, step one is satisfied, and we should proceed to step two and determine whether R&R established by clear and convincing evidence a prima facie case for each essential element of its claims. *See id*. § 27.005(c).

---

[3] Actually, the legislature has struck the "relates to" prong from the TCPA—for cases filed on or after September 1, 2019. But those amendments don't apply to cases, like this one, filed before that date.

The majority opinion effectively erases the words "relates to, or is in response to" from § 27.005(b) by holding that "the legal action must be *factually predicated* on the alleged conduct" that constitutes an exercises of a protected right. The "factually predicated" test paraphrases the "based on" prong. But obviously that's not the only way to satisfy step one; the legislature didn't include the words "relates to, or is in response to" in § 27.005(b) for no reason. *See Phillips v. Bramlett*, 288 S.W.3d 876, 880 (Tex. 2009) ("We further try to give effect to all the words of a statute, treating none of its language as surplusage where reasonably possible."); *see also Arey v. Shipman Agency, Inc.*, No. 10-18-00100-CV, 2019 WL 1966896, at *2 n.1 (Tex. App.—Waco May 1, 2019, pet. filed) (mem. op.) (rejecting argument that step one requires proof that the claimant is retaliating against protected conduct); *Cavin v. Abbott*, 545 S.W.3d 47, 69 (Tex. App.—Austin 2017, no pet.) (noting that claims are "related to" protected conduct if "there is some sort of connection, reference, or relationship between them").

A further problem with the majority opinion's premise is that it removes from TCPA coverage a category of cases at the heart of why the legislature enacted the TCPA in the first place. Specifically, the TCPA was designed to attack SLAPP (strategic lawsuits against public participation) suits when (i) A sues B following B's communications covered by the Act and (ii) A's suit is intended to silence B from exercising her protected rights. For example, suppose local residents emphatically and publicly express concern about the health and safety effects of a proposed nuclear power plant in their neighborhood. Then the would-be power plant owner sues the residents over ostensibly unrelated matters, such as alleged boundary disputes. This would be a strategic lawsuit against public participation, but the majority opinion would not extend the TCPA's protection to the residents.

Nonetheless, even under the majority opinion's erroneous reasoning, this case passes the "factually predicated" test. The conduct at issue is SFT's refusal (communicated judicially) to produce documents.

### c. *Dyer v. Medoc* does not resolve this case.

The majority opinion implies that our *Dyer v. Medoc Health Servs., L.L.C.* opinion held that the TCPA nexus requirement is satisfied only if the legal action is "factually predicated" on the protected conduct. *See* 573 S.W.3d 418, 428 (Tex. App.—Dallas 2019, pet. denied). But the implication is incorrect. The majority errs by considering only the following *Dyer* passage:

> In order to trigger the TCPA's protection, the "legal action" must be "factually predicated on the alleged conduct that falls within the scope of [the] TCPA's definition of 'exercise of the right of free speech,' petition, or association."

*Id.* at 428 (quoting *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. pending)).[4] But the very next sentence of *Dyer* recognizes and applies all three prongs of step one to the facts:

> Appellees' claims are not based on, *related to, or in response to* any communications between Dyer and any other person about the FBI investigation or on Dyer providing appellees' proprietary software and confidential information to the FBI.

*Id.* at 429 (emphasis added). And it recognized and applied all three prongs again in its holding:

> We conclude appellants failed to establish by a preponderance of the evidence that appellees' claims are based on, *related to, or in response to* appellants' exercise of their right of free speech as defined by the TCPA.

*Id.* (emphasis added). We read statutes as a whole; we should read judicial opinions the same way.

Finally, I note that the case *Dyer* cited for the "factually predicated" language makes clear that the "factually predicated" test wasn't intended to be the only way to satisfy step one:

> Although not further defined in the Act, the phrase ["based on, relates to, or is in response to"] serves to capture, *at a minimum*, a "legal action" that is factually

---

[4] This is true enough in the sense that there must be a factual connection between the protected communication and ensuing suit. But, as the nuclear power plant/boundary dispute illustration shows, the SLAPP suit need not rely on the predicate communication's content itself to be the basis for the subject suit. *See Damonte*, 2019 WL 3059884, at *5 (Whitehill, J., concurring).

predicated on the alleged conduct that falls within the scope of the TCPA's definition of 'exercise of the right of free speech,' petition, or association.

*Grant*, 556 S.W.3d at 879 (emphasis added). We should not assume that the *Dyer* panel intended to misrepresent *Grant*'s meaning.

In summary:

- SFT's declaratory judgment petition and nonsuit were exercises of the rights to petition and free speech because they were communications in and pertaining to a judicial proceeding on a matter of public concern.

- The record shows that R&R's lawsuit is based and predicated on SFT's thrice judicially communicated statements denying that it is subject to the TPIA.

- The record also shows that R&R's lawsuit relates to and was filed in response to SFT's declaratory judgment petitions and nonsuit motion.

- So R&R's legal action is based on, relates to, and is in response to SFT's exercises of the right to petition and free speech, and SFT carried its TCPA step one burden.

### III. CONCLUSION

Whether the TCPA, in the abstract or its application to the facts here in particular, is good public policy is not our job to say. Rather, that public policy defining job belongs to the 181 members of the legislature and the governor. It is for that reason that a court should not ignore a statute's plain text as applied to undisputed facts (unless there is an absurd result, which the majority does not suggest). Because the majority opinion does that, I dissent.

/Bill Whitehill/
_____
BILL WHITEHILL
JUSTICE

170973DF.P05

–11–