Paul LEVATINO, Appellant

v.

APPLE TREE CAFÉ TOURING, INC.
and Erica Wright, Appellees

No. 05–15–00614–CV

Court of Appeals of Texas,
Dallas.

Opinion Filed March 11, 2016

Joseph H. Gillespie, Dallas, TX, for appellants.

Kennedy Barnes, Jan Michal Zapendowski, Dallas TX, for appellees.

Before Justices Lang–Miers, Evans, and Whitehill

## OPINION

Opinion by Justice Whitehill

Appellees Apple Tree Café Touring, Inc. and Erica Wright sued appellant Paul Levatino for a declaratory judgment that Levatino was not a "talent manager" for appellees. Levatino appeals the trial court's denial of his motion to dismiss both appellees' claims under Texas's anti-SLAPP statute, Chapter 27 of the Texas Civil Practice and Remedies Code.

This Chapter 27 case addresses whether a declaratory-judgment suit filed after receiving a lawyer's demand letter threatening a defamation suit was brought in response to the defendant's exercise of his rights to petition or of association. We conclude that, based on our facts, it was not; and we therefore affirm the trial court's order.

## I. BACKGROUND

### A. Factual Allegations.

Unless otherwise noted, the following are facts alleged in appellees' live pleading:

Erica Wright is a recording artist, producer, and actress professionally known as Erykah Badu. Apple Tree Café Touring, Inc. is one of Badu's companies.

Badu has prided herself on managing her own career and has never had a talent manager.

Levatino worked for Badu through her various companies, including Apple Tree, for about eight years. His job duties involved marketing, concert and event management, merchandising, and other business operations.

Badu fired Levatino in May 2014. She later used social media to state that she has never had a manager and that Levatino was not her manager. She also posted a statement that Levatino had "shut down my main fan info face book [sic] page."

On or about October 20, 2014, Levatino's lawyer sent Badu's lawyer a demand letter accusing Badu of defamation. Appellees characterize the demand letter as threatening a lawsuit "solely to intimidate, extort and blackmail [appellees] into paying Levatino millions of dollars."

Although it is not mentioned in appellees' petition, evidence filed with the trial court shows that nine days later Levatino's lawyer sent Badu's lawyer a second demand letter.

### B. Procedural History.

Appellees filed their original petition against Levatino on October 31, 2014. They sought a declaratory judgment that "Levatino was not a talent manager for [appellees] and is therefore owed no compensation related to management ser-vices." They also sought attorneys' fees and court costs.

Levatino answered and timely moved to dismiss under Chapter 27 of the civil practice and remedies code, arguing that his demand letters were protected activity under that statute. Appellees responded.

The trial court held a hearing on Levatino's motion and denied the motion by written order. Levatino thereafter filed a notice of interlocutory appeal.

## II. ANALYSIS

### A. Summary of the Issues.

Levatino raises five issues:

His first issue asserts generally, without a separate supporting argument, that the trial court erred by denying his dismissal motion. We need not directly address this issue because it is reflected in his second and third issues.

His second and third issues assert that his pre-suit demand letters were protected activity under Chapter 27 and that appellees' lawsuit is based on, relates to, or is in response to those letters. Because these issues are intertwined, we discuss them together.

His fourth issue asserts that appellees failed to meet their § 27.005(c) burden to prove a viable claim against him.

Finally, his fifth issue asserts that he proved a defense to appellees' suit under § 27.005(d).

For the reasons discussed below, we conclude that Levatino's demand letters were not the exercise of his right of association or his right to petition, we reject his first three issues, and we do not reach his fourth and fifth issues.

**B. Issues Two and Three: Did Levatino show that appellees' lawsuit, which followed his demand letters, is based on, relates to, or is in response to his exercise of the right of association or the right to petition?**

**1. Applicable Law and Standard of Review.**

■ We review de novo the trial court's determination of whether the movant carried its § 27.005(b) burden. *See D Magazine Partners, L.P. v. Rosenthal*, 475 S.W.3d 470, 479 (Tex.App.—Dallas 2015, pet. pending); *ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 845 (Tex.App.—Dallas 2015, pet. filed).

Chapter 27 is an "anti-SLAPP statute," meaning that the legislature enacted it to curb "strategic lawsuits against public participation." *Tatum v. Hersh*, No. 05–14–01318–CV, —— S.W.3d ——, ——, 2015 WL 9583494, at *2 (Tex.App.—Dallas Dec. 30, 2015, no pet. h.). Its main feature is a motion-to-dismiss procedure that allows defendants at an early stage to seek dismissal, attorneys' fees, and sanctions for filing a meritless suit in response to a defendant's proper exercise of a protected right. *Id.* at —— – ——, 2015 WL 9583494, at *2–3.

A Chapter 27 movant bears the initial burden of showing by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise of" certain constitutional rights, such as in this case the right of association or the right to petition. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b).

If the movant carries its initial burden, the claimant must then establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). If the claimant carries that burden, the court must deny the motion unless "the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id.* § 27.005(d).

"In determining whether a legal action should be dismissed ..., the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a).

**2. Did Levatino show that this lawsuit is based on, relates to, or is in response to his exercise of the right of association?**

Chapter 27 defines "exercise of the right of association" as "a communication *between* individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2) (emphasis added).

Levatino argues that his pre-suit demand letters to appellees were exercises of his right of association because they were communications he and his lawyer made "in an effort to promote, pursue, and express a common interest of protecting Mr. Levatino's civil rights." Appellees, however, disagree because (i) the letters were between opposing counsel and (ii) they did not involve the expression, promotion, or defense of *common* interests between the opposing sides. We agree with appellees.

■ The demand letters were communications from Levatino's lawyer to appellees' lawyer. The first letter (i) asked Badu to stop making negative statements about Levatino, (ii) asked Badu and her companies to preserve all documents and communications about Levatino, and (iii) asked whether Badu "wishe[d] to consider a monetary resolution" with Levatino before Levatino filed suit. The letter also said that Levatino would sue Badu for defamation if Badu did not respond within

11 days and enclosed a copy of a $3.21 million defamation verdict that Levatino's lawyer had obtained in Dallas County in 2008.

▪ The second letter asked Badu to (i) publicly retract and correct her false statements about Levatino and (ii) acknowledge the damage she had caused to Levatino's career. It also invited further discussions if Badu were interested in globally settling all claims without litigation.

Levatino argues that his demand letters were the exercise of the right of association because they were joint efforts by Levatino and his lawyer to promote, pursue, and express their common interest in protecting Levatino's civil rights. But this fact, even if true, does not satisfy § 27.001(2) because the letters were between adversaries and thus were not between persons acting to promote, pursue, or express their common interest in protecting Levatino's civil rights.

▪ Specifically, to be an exercise of the right of association, a communication must be "*between* individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2) (emphasis added). As a matter of first impression, we hold that a lawyer's adversarial communication to a third party on behalf of his client does not meet the statutory definition of exercising the right of association.

Accordingly, we conclude, de novo, that Levatino failed to show by a preponderance of the evidence that the demand letters were exercises of his right of association. It thus follows that he has not shown that this lawsuit is based on, relates to, or is in response to his exercise of that right.

**3. Did Levatino show that this lawsuit is based on, relates to, or is in response to his exercise of the right to petition?**

▪ Levatino's other theory is that his demand letters were exercises of his right to petition. Chapter 27 gives "exercise of the right to petition" numerous definitions, but Levatino relies principally on the definition found in § 27.001(4)(A)(i): "a communication in or pertaining to ... a judicial proceeding." *Id.* § 27.001(4)(A)(i).

Levatino argues that his letters were communications "pertaining to ... a judicial proceeding," specifically his defamation claims. Appellees, however, disagree because there was no pending litigation—and thus no judicial proceeding—when Levatino's lawyer sent the letters.

Each side says the other side is adding words to the statute. According to Levatino, appellees rewrite the statute to say "a communication in or pertaining to a *previously filed* judicial proceeding." On the other hand, appellees say that Levatino rewrites the statute to say "a communication in or pertaining to *an anticipated, future, threatened, or pending* judicial proceeding."

▪▪ The parties correctly agree that "[a] court may not judicially amend a statute by adding words that are not contained in the language of the statute. Instead, it must apply the statute as written." *Lippincott v. Whisenhunt,* 462 S.W.3d 507, 508 (Tex.2015) (per curiam). Moreover, "[u]ndefined terms in a statute are typically given their ordinary meaning." *State v. $1,760.00 in U.S. Currency,* 406 S.W.3d 177, 180 (Tex.2013) (per curiam).

For the reasons discussed below, we conclude that the ordinary meaning of "a judicial proceeding" is an actual, pending judicial proceeding. *See* Tex. R. Civ. P. 22 ("A civil suit ... shall be commenced by a petition filed in the office of the clerk."); Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the

court."). That is, a judicial proceeding is "any proceeding initiated to procure an order or decree, whether in law or in equity." *See Judicial proceeding*, BLACK'S LAW DICTIONARY (10th ed.2014).

Levatino nonetheless argues that the phrase "pertaining to" is a broad phrase that suggests the legislature intended the term "a judicial proceeding" to encompass anticipated proceedings as well as pending proceedings. We do not agree that the phrase "pertaining to" expands the ordinary meaning of "a judicial proceeding" to include anticipated or potential future judicial proceedings.

■ Levatino next argues that § 27.001(4)(C) shows that the legislature intended the right to petition to encompass pre-litigation communications between private parties because that subsection defines the right to petition as "a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body." CIV. PRAC. & REM. § 27.001(4)(C). But we are not persuaded that these letters were "reasonably likely" to encourage judicial consideration or review. Rather, they sought to avoid judicial review of the dispute.

Levatino further urges us to follow the approach California courts have taken in interpreting that state's anti-SLAPP statute. Construing that statute, one California court recently said, "Ordinarily, a demand letter sent in anticipation of litigation is a legitimate speech or petitioning activity that is protected under section 425.16 [of the California Code of Civil Procedure]." *Malin v. Singer*, 217 Cal.App.4th 1283, 159 Cal.Rptr.3d 292, 299 (2013). But the California anti-SLAPP statute differs from Chapter 27. Specifically, the California statute applies to

> (1) any written or oral statement or writing made *before* a legislative, executive, or judicial proceeding[.]

CAL. CIV. PROC. CODE § 425.16(e)(1) (emphasis added). If the word "before" in § 425.16(e)(1) is meant temporally, then the California statute is materially different from § 27.001(4)(A)(i) and California cases applying § 425.16(e)(1) to pre-suit demand letters are not apposite or persuasive. But if the word "before" is intended to be synonymous with "in," then we disagree with the conclusion that, under the Texas statute, pre-suit demand letters are statements made "before a judicial proceeding."

For the above reasons, Levatino has not shown by a preponderance of the evidence that the demand letters were exercises of his right to petition. It thus follows that he has not shown that this lawsuit is based on, relates to, or is in response to his exercise of that right.

### 4. Conclusion.

Because Levatino has not shown that he carried his threshold burden under § 27.005(b), we reject his second and third issues. Accordingly, we further conclude that the trial court correctly denied Levatino's motion to dismiss, and we reject Levatino's first issue. As a result, we need not address his fourth and fifth issues concerning the parties' burdens under § 27.005(c) and (d).

### III. DISPOSITION

For the foregoing reasons, we affirm the trial court's order denying Levatino's motion to dismiss.