**AFFIRMED and Opinion Filed July 3, 2019**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01171-CV

**AMY ROBILIO REED AND AMY ROBILIO REED, PLLC, Appellants**
**V.**
**CENTURION TERMINALS, LLC AND**
**CENTURION PECOS TERMINAL, LLC, Appellees**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-06689**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Reichek

Amy Robilio Reed and her law firm, Amy Robilio Reed, PLLC (collectively "Reed"), appeal the trial court's order denying Reed's motion to dismiss under the Texas Citizen's Participation Act ("TCPA"). Because we conclude Reed failed to establish that the claims brought against her by Centurion Terminals, LLC and Centurion Pecos Terminal, LLC ("CPT") were based on, related to, or in response to Reed's exercise of her right of free speech, right to petition, or right of association, we affirm the trial court's order.

### Background

The relevant facts asserted in this case are as follows. In September 2013, Marc Marrocco, along with others, formed Centurion Logistics, LLC for the purpose of investing in real estate in the Permian Basin area of West Texas. In 2014, Centurion Logistics identified a parcel of land in

Reeves County that it felt would be of interest to service providers in the oil and gas industry. In the process of securing financing to purchase the property, CPT was created to be the purchasing entity. Centurion Logistics was a 40% owner of CPT and Stampede TX Energy, LLC owned the remaining 60%. CPT retained Reed, who had an existing attorney-client relationship with Marrocco, to represent it in connection with the purchase. CPT purchased a second parcel of land in Reeves County in early 2015, and Reed represented the company in connection with that purchase as well.

On October 14, 2015, Reed entered into an attorney-client relationship with Centurion Terminals. The representation related to a land acquisition in Orla, Texas. The engagement letter disclosed her representation of Marrocco, Centurion Logistics, and CPT, but stated she did not believe any current conflicts existed between Centurion Terminals and the disclosed persons or entities.

After acquiring the Reeves County property, CPT encountered difficulties in marketing the land to potential tenants and purchasers. As a result, CPT borrowed $200,000 from Centurion Terminals for marketing and general use purposes. In the promissory note evidencing the loan, CPT agreed to allow Centurion Terminals "to explore the economic feasibility of the construction of a rail served crude transload facility on the [Reeve's County property] and shall facilitate any reasonable request of [Centurion Terminals] required by [Centurion Terminals] to explore said project including facilitating any conversation [Centurion Terminals] desires to enter into with the Union Pacific Railroad."

On May 3, 2016, Union Pacific sent Tom Ramsey, an officer of Centurion Terminals, correspondence advising that it had accepted a proposal to establish a new rail service location on the Reeves County property. Three weeks later, Reed sent an email to Union Pacific attaching a letter on CPT letterhead written by Marrocco. Marrocco's letter described Centurion Terminals

as "unaffiliated" with CPT, and stated that Centurion Terminals did not have the right to act for or on behalf of CPT, or use any portion of the Reeves County Property. The letter went on to state that the rail service project proposal was provided to Union Pacific by Centurion Logistics, which was "one of two managers of [CPT], and has certain rights in connection with the management and development of the project." Marrocco signed the letter as "President and Manager" of Centurion Logistics.

On May 26, Union Pacific sent correspondence to Centurion Terminals stating it was withdrawing its May 3 letter to Ramsey and "any offer extended therein." The next day, Ramsey sent a letter to CPT advising that Centurion Terminals no longer wished to pursue a land lease or construct a crude oil terminal on the Reeves County property. The letter further stated that, because of the actions taken by Reed and Marrocco with respect to Union Pacific, Centurion Terminals considered CPT in default under the promissory note.

Centurion Terminals and CPT (the "Centurion Parties") brought this suit against Reed alleging that Union Pacific's decision to rescind its offer, and Centurion Terminals' resulting decision to no longer engage in discussions with CPT regarding the Reeves County property, were a direct result of Reed's acts and omissions. According to the Centurion Parties, the correspondence sent by Reed to Union Pacific "directly conflicted with and violated" the provision in the note whereby CPT agreed to facilitate conversations between Centurion Terminals and Union Pacific and Reed should have known that Marrocco, as a manager of CPT's minority interest member, did not have authority to make representations on behalf of CPT. In addition, the Centurion Parties asserted Reed knew before she agreed to represent Centurion Terminals in connection with the Orla property purchase, that Marrocco was anticipating bringing claims against Centurion Terminals. The Centurion Parties alleged Reed established an attorney-client relationship with Centurion Terminals for the purpose of obtaining the company's confidential

information and providing such information to Marrocco to assist in his preparation of a lawsuit against Centurion Terminals. The Centurion Parties asserted claims for negligence and breach of fiduciary duty.

Two months after the Centurion Parties filed suit, Reed filed a motion to dismiss their claims under the TCPA. Reed argued the lawsuit was based on, related to, or in response to her exercise of her rights to free speech, association, and to petition. Reed further argued the Centurion Parties could not produce clear and specific evidence to establish a prima facie case for each of the elements of their claims. The Centurion Parties responded that their lawsuit concerned legal malpractice arising out of Reed favoring one client over another and did not involve any protected rights. The trial court denied Reed's motion, concluding that the TCPA did not apply to the dispute at issue. Reed brought this appeal.

**Analysis**

**I. The TCPA**

In her first issue, Reed contends the trial court erred in denying her motion to dismiss because the Centurion Parties' claims were based on, related to, or in response to her exercise of her rights to free speech, association, or to petition. The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The stated purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam) (*Coleman II*). We construe the TCPA "liberally to effectuate its purpose and intent

–4–

fully." Tex. Civ. Prac. & Rem. Ann. § 27.011(b); *see also State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

To effectuate the statute's purpose, the Legislature has provided a procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of First Amendment rights protected by the statute. *Coleman II*, 512 S.W.3d at 898; *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003(a), .005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). The movant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on, related to, or in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b); *see also S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the non-movant to establish by clear and specific evidence a prima facie case for each essential element of its claims. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *see Elliott*, 564 S.W.3d at 847. If the court finds that a motion to dismiss filed under the TCPA is frivolous or intended to delay, the court may award costs and reasonable attorney's fees to the responding party. *Id*. § 27.009(b).

## II. Standard of Review

We review de novo the trial court's ruling on a motion to dismiss under the TCPA. *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied). In conducting this review, we consider, in the light most favorable to the non-movant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based. *Fishman v. C.O.D. Capital Corp.*, No. 05-16-00581-CV, 2017 WL 3033314, at *5 (Tex. App.—Dallas July 18, 2017, no pet.) (mem. op.); *see also* Tex. Civ. Prac. & Rem. § 27.006(a). However, the plaintiffs' pleadings are "the best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467, (Tex. 2017).

**III. Freedom of Speech**

As the movant to dismiss under the TCPA, Reed was required to show by a preponderance of the evidence that the Centurion Parties' legal action "is based on, relates to, or is in response to" her exercise of the right of free speech, right of association, or her right to petition. TEX. CIV. PRAC. & REM. ANN. § 27.005(b). Each of these protected rights requires a "communication" as defined by the TCPA. *Id.* § 27.001(2)–(4); *see also Krasnicki v. Tactical Entm't., LLC*, No. 05-18-00463-CV, 2019 WL 2136155, at *3 (Tex. App.—Dallas May 16, 2019, no pet.). For purposes of the exercise of free speech, the communication must be made in connection with a "matter of public concern. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "matter of public concern" includes an issue related to health or safety; environmental, economic, or community well-being; the government, a public official or public figure; or a good, product, or service in the marketplace. *Id*. § 27.001(7).

Reed argues the Centurion Parties' suit was based on, related to, or in response to her exercise of her right of free speech because the Centurion Parties specifically pleaded claims arising out of the email communication she sent to Union Pacific enclosing Marrocco's letter. Reed asserts this communication involved a "matter of public concern" because "it allegedly affected the Centurion Parties' economic well-being." This Court has concluded, however, that private communications made in connection with a business dispute do not involve matters of public concern where they only address private economic interests. *See Pingua Lei v. Nat. Polymer Int'l Corp.*, No. 05-18-01041-CV, 2019 WL 2559756, at *6 (Tex. App.—Dallas June 21, 2019, no pet. h.). The Centurion Parties' economic well-being is not a "matter of public concern." *Id*.

Reed further argues her email related to a "'good, product, or service in the marketplace'; namely, a Union Pacific Railroad rail line providing transportation of goods and services supporting the oil and gas industry." In *Erdner v. Highland Park Emergency Center, LLC*, we

addressed a similar argument concerning communications made in connection with a proposal to build a free standing emergency room. No. 05-18-00654-CV, 2019 WL 2211091, at *4–5 (Tex. App.—Dallas May 22, 2019, no pet. h.). We concluded that, "construing the [TCPA] to denote that all private business discussions are a 'matter of public concern' if the business offers a good, service, or product in the marketplace . . . is a potentially absurd result that was not contemplated by the Legislature." *Id*. at *5. This is particularly so when the good, service, or product does not yet exist. *Id*. We noted that "if a communication does not relate to a matter of public concern, a contention that it will result in a matter of public concern is not sufficient to establish the TCPA applies." *Id*. at *4.

The email in this case concerned ownership of the Reeves County property. Although Reed asserts the communication concerned a rail line on the property providing transportation of goods and services, that rail line did not, and does not, exist. Furthermore, the communication did not address any aspect of the rail line other than an apparent dispute over the ability of Centurion Terminals to participate in the proposed project. The email discussed only private business matters and the economic interests of the Centurion Parties. As such it did not involve a matter of public concern. *Id*. Because the email communication was not made in connection with a matter of public concern, we conclude Reed has failed to establish the claims made against her are based on, related to, or in response to her exercise of her right of free speech.

## IV. Right to Petition

Reed next argues the Centurion Parties' lawsuit is based on, related to, or in response to her exercise of her right to petition because they have alleged Reed assisted Marrocco in the investigation and preparation of a lawsuit he was anticipating bringing against Centurion Terminals. The TCPA sets out numerous ways in which a communication can be the "exercise of the right to petition." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4). Reed contends her

–7–

alleged communications fall within the Act because they were "pertaining to a judicial proceeding," "reasonably likely to encourage consideration or review of an issue by a … judicial, or other governmental body," or a "communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state." *See id*. §27.001(4)(A)(i), (C), (E). Even assuming the scope of Reed's right to petition includes anticipated but unfiled litigation unrelated to her, we conclude Reed has failed to show that the communications at issue implicate that right.

In her reply brief, Reed appears to concede that her alleged communications with Marrocco were not communications "pertaining to a judicial proceeding" because there was no existing judicial proceeding at the time the communications were made. *See Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 728–29 (Tex. App.—Dallas 2016, pet. denied) (a "judicial proceeding" is an actual, pending judicial proceeding). Reed contends, however, that the other two definitions of the "exercise of the right to petition" she relies on are broad enough to encompass pre-suit communications. Although those definitions may encompass some pre-suit communications, the language of the definitions shows they clearly do not encompass all pre-suit communications. *Id*. at 729. Reed bore the burden of showing the Centurion Parties' claims were predicated on protected expression as defined by the Act. *Id*. at 727.

Reed simply states, without discussion or argument, that the communications between her and Marrocco, as alleged in the Centurion Parties' petition, implicate her right to petition because the alleged communications were "reasonably likely to encourage consideration or review of an issue by a judicial body." Reed does not assert that the lawsuit is based on any communications other than those specifically alleged in the petition. In reviewing a trial court's decision on a TCPA motion to dismiss, we view the pleadings in the light most favorable to the non-movant, favoring the conclusion that the claims are not predicated on protected expression. *Sloat v. Rathbun*, 513

S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd). The Centurion Parties alleged in their petition that Reed entered into an attorney-client relationship with Centurion Terminals knowing that her other client, Marrocco, was planning to file suit against Centurion Terminals. According to the Centurion Parties, Reed established her attorney-client relationship with Centurion Terminals for the purpose of obtaining the company's confidential information, which she then disclosed to Marrocco to assist him with his anticipated lawsuit. Reed does not explain how a communication in which she allegedly disclosed confidential information to Marrocco, after he was already planning to file suit against Centurion Terminals, was "reasonably likely to encourage" judicial consideration of any issue. We will not read the statute to equate an allegation of giving a client an unfair and unethical advantage in a lawsuit by disclosing attorney-client privileged information with protected expression that encourages judicial review.

With respect to Reed's assertion that the Centurion Parties' petition alleges "a communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state," she fails to provide any argument or authority to show how this definition of the right to petition applies to the Centurion Parties' allegations. The failure to specifically argue and analyze one's position or provide authorities waives any error on appeal. *In re B.A.B.*, 124 S.W.3d 417, 420 (Tex. App.—Dallas 2004, no pet.). We conclude Reed failed to establish by a preponderance of the evidence that the Centurion Parties' claims are based on, related to, or in response to her exercise of her right to petition.

## V. Right of Association

Finally, Reed contends the Centurion Parties' lawsuit is based on, related to, or in response to her right to associate with Marrocco. The TCPA defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2).

This Court has already held that the TCPA's definition of the right of association does not apply to private communications that did not involve any public or citizen's participation. *See Dyer*, 573 S.W.3d at 426. Reed has made no showing that the communications upon which the lawsuit against her is based involve any sort of public or citizen's participation. Accordingly, we conclude Reed has failed to establish that the claims against her are based on, related to, or in response to her right of association. *Id*.

## Conclusion

Based on the foregoing, we conclude Reed failed to establish the TCPA applies to the claims brought against her by the Centurion Parties and we resolve her first issue against her. Because of our resolution of Reed's first issue, it is unnecessary for us to address Reed's remaining arguments. We affirm the trial court's order.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

181171F.P05

–10–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

AMY ROBILIO REED AND AMY
ROBILIO REED, PLLC, Appellants

No. 05-18-01171-CV     V.

CENTURION TERMINALS, LLC AND
CENTURION PECOS TERMINAL, LLC,
Appellees

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-18-06689.
Opinion delivered by Justice Reichek.
Justices Schenck and Osborne participating.

In accordance with this Court's opinion of this date, the order of the trial court denying the motion to dismiss filed by AMY ROBILIO REED and AMY ROBILIO REED, PLLC is **AFFIRMED**.

It is **ORDERED** that appellees CENTURION TERMINALS, LLC and CENTURION PECOS TERMINAL, LLC recover their costs of this appeal from appellants AMY ROBILIO REED and AMY ROBILIO REED, PLLC.

Judgment entered July 3, 2019