# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## ON MOTION FOR REHEARING

---

## NO. 03-22-00378-CV

---

**Jason Murray Davis and Davis & Santos, P.C., Appellants**

**v.**

**Graham Weston; Carowest Land Ltd.; Graham Weston as Trustee of Countyline Land Trust; and Kuehler Road, LLC f/k/a Kuehler Road, Ltd., Appellees**

---

**FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
NO. C2021-1179B, THE HONORABLE STEPHANIE BASCON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

We withdraw our opinion and judgment issued on December 6, 2024, on our own motion and substitute the following opinion and judgment in their place. Appellants' motions for rehearing and for reconsideration en banc are dismissed as moot.

This case arises out of a suit brought by Graham Weston; Carowest Land Ltd.; Graham Weston as Trustee of Countyline Land Trust; and Kuehler Road, L.L.C. f/k/a Kuehler Road, Ltd. (collectively, the Graham Parties) against their former attorney and law firm Jason Murray Davis and Davis & Santos, P.C. (collectively, Davis) for claims of breach of fiduciary duty and fraud by nondisclosure. Davis appeals from the district court's denial of his motion to

dismiss pursuant to the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. We will affirm the order denying the motion to dismiss.

## BACKGROUND[1]

The underlying suit arises from a contentious divorce proceeding between Graham Weston and Elizabeth Weston. Graham and Elizabeth were married in 1994. During the marriage, Graham amassed a net worth of at least $1 billion as a co-founder of Rackspace Technology, Inc. Elizabeth supported the family by remaining at home and homeschooling their three sons. Throughout their marriage, Graham and Elizabeth managed three of the family's companies: Carowest Land Ltd.; Kuehler Road, Ltd.; and Countyline Land Trust (collectively, the Real Estate Entities). Graham and Elizabeth hired Davis to represent the Real Estate Entities in various lawsuits throughout the years, starting around 2009. Davis also represented Graham in litigation involving Rackspace and advised him on other non-litigation matters related to Rackspace.

### Davis's involvement in representing the Real Estate Entities

In 2009, the Westons hired Davis to represent Carowest Land Ltd. (Carowest) in litigation with the City of New Braunfels for several claims, including alleged violations of the Texas Open Meetings Act.[2] At least one piece of correspondence from that litigation reflects

---

[1] The background facts arise from the pleadings and affidavits, which we view in the light most favorable to the nonmovant. *See O'Rourke v. Warren*, 673 S.W.3d 671, 680 (Tex. App.—Austin 2023, pet. denied).

[2] *See City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501 (Tex. App.—Austin 2014, no pet.); *City of New Braunfels v. Carowest Land, Ltd.*, 549 S.W.3d 163 (Tex. App.—Austin 2017), *order withdrawn* (June 19, 2020), *review granted, judgment vacated*, 615 S.W.3d 156 (Tex. 2020).

Davis's statement that he represented "Carowest Land Company Ltd. *and the Weston Family* in matters related to the City of New Braunfels' South Tributary Project (the Project)." The petition in the Carowest litigation described Carowest as being "a limited partnership affiliated with the Weston family." In addition, in 2013, Davis represented Countyline and Kuehler Road in litigation relating to alleged property damage and encumbrances. Both Carowest's and Kuehler's general partner is an entity called Chupacabra, of which Graham is the manager. As part of this role, Graham selected the attorney to represent those entities and was in charge of paying legal fees for those entities out of those entities' funds. Graham let Elizabeth be the day-to-day contact with Davis regarding the litigation but he was also heavily involved in the decision-making process. As Graham was the sole member of the entities, he had the authority to terminate Davis's representation at any time.

**Davis's history representing Graham and Elizabeth individually**

In addition to representing the Real Estate Entities, Davis represented each of the Westons individually in separate matters throughout the years. In 2012, Graham hired Davis to represent him individually in a suit brought against Graham and Rackspace. The litigation concerned an executive-level employee who sought equity in the company. Davis successfully obtained summary judgment on Graham's behalf. Following the matter, either in 2013 or 2014, Graham and Davis had a brief conversation about the Rackspace litigation, but neither party has been able to recall the substance of that conversation.

In 2015, Davis represented Elizabeth in federal bankruptcy court in a dispute involving her and her company Equis Equine, LLC, related to a fraudulent horse auction. Graham was not a party to the action or otherwise involved. However, during that suit Davis

3

contemplated adding a DTPA (Deceptive Trade Practices Act) claim; in order for Elizabeth to qualify as a "consumer" under the statute, her net worth could not exceed $25 million. To determine her net worth, Davis was required to access Graham and Elizabeth's personal information regarding family trusts. Davis met with the Weston family accountant and tax lawyer to gather information regarding the Weston family's finances. The end of the suit resulted in a $1.5 million judgment in favor of Equis Equine, LLC.

**Representation of the Westons' son**

In 2020, Elizabeth and Graham's adult son had a mental-health crisis that led to criminal charges and involuntary commitment to a mental-health facility. Davis, Elizabeth, and Graham communicated closely regarding the son's treatment options. Davis dealt directly with the mental-health facility and even recommended his brother-in-law be the son's treating psychiatrist. In a series of texts, Graham enlisted Davis to convince Elizabeth that their son needed mental-health treatment, stating: "[I'm] not asking for you to be loyal to me over [Elizabeth]. I just need your help—using your own judgment." In the same text exchange, Graham thanked Davis for his "commitment to service [the Weston family] for so many years." At the hearing in the divorce suit on Graham's motion to disqualify Davis, Graham testified that disagreements over the son's care were part of his motivation for the divorce. In addition, after the underlying suit was filed in 2021, Graham disclosed that he had designated Davis as a potential co-guardian of the Westons' children in a handwritten codicil to Graham's will in 2009.

**Divorce proceedings**

In mid-2019, Elizabeth began confiding in Davis regarding issues in her marriage. She told Davis that Graham was unfaithful and that he had been sexually, physically, and

emotionally abusive towards her. Elizabeth, at Davis's direction, began recording documentary evidence of the abuse, including text messages from Graham and photos of her injuries from the alleged physical abuse. Elizabeth also shared the allegations with a former FBI agent. Despite preserving evidence, Elizabeth decided against reporting Graham for fear of retaliation.

In October 2020, Graham retained attorney Richard Orsinger and filed divorce proceedings against Elizabeth. Two days later, Graham nonsuited the petition. Elizabeth then retained Davis and filed her divorce petition on October 26, 2020, in Comal County. Graham and his lawyers immediately moved to disqualify Davis and his firm from representing Elizabeth in the divorce, contending that Davis had breached his fiduciary duty to Graham and the Real Estate Entities because Davis had represented Graham and the Real Estate Entities in the past, including representing the Westons' adult son in a criminal matter, representing the Real Estate Entities in various suits, and representing Graham individually. After a hearing where both parties and Davis testified, the trial court granted the motion to disqualify. Among other findings, the trial court found:

> • Davis had a fiduciary duty and relationship of trust and loyalty with Graham, and that Graham was a former and current client of Davis;
>
> • Davis qualifies as a "family attorney" for the Westons from his ongoing representation of the family members and their closely held companies; and
>
> • Davis had an informal fiduciary relationship with Graham arising before the divorce proceedings.

As Elizabeth was represented in the divorce by a series of attorneys in addition to Davis, the trial court's order disqualifying Davis did not leave Elizabeth without counsel. Nevertheless, Elizabeth petitioned for a writ of mandamus from this Court, seeking to set aside the

5

disqualification order.  This Court denied the petition.[3]  After losing Davis as her counsel in the divorce proceedings, Elizabeth terminated the remaining attorneys and represented herself pro se at trial where she presented no evidence.  Graham filed a motion for directed verdict on Elizabeth's affirmative claims regarding Graham's alleged abuse, which the trial court granted, and the remainder of the suit was tried to a jury verdict.[4]

**The Graham Parties file the underlying suit**

After the trial court disqualified Davis but before the divorce proceedings were final, Graham and the Real Estate Entities filed the underlying suit in July 2021, claiming that Davis and his firm breached their fiduciary duties of loyalty and confidentiality to Graham by secretly investigating, developing, and pursuing civil, criminal, and divorce claims against Graham on behalf of Graham's wife while simultaneously representing Graham and the Real Estate Entities.  Graham and the Real Estate Entities (collectively, the Graham Parties) also allege causes of action for fraud by nondisclosure.  The Graham Parties seek damages in the form of attorneys' fees in connection with moving to disqualify Davis from the act of representing Elizabeth in the divorce proceeding.  They also seek disgorgement of attorneys' fees in the amount of $2.9 million that they paid to Davis for legal services dating back to 2009.

Davis filed a TCPA motion, seeking dismissal of the Graham Parties' claims and recovery of attorneys' fees.  The trial court granted the parties limited discovery before the TCPA hearing, discovery that included two depositions of Davis and production of several years'

---

[3]  *See In re Weston*, No. 03-21-00121-CV, 2021 WL 3026963 (Tex. App.—Austin July 16, 2021, orig. proceeding).

[4]  Elizabeth appealed the final divorce decree to this Court, which we affirmed in its entirety.  *See Weston v. Weston*, No. 03-23-00039-CV, 2024 WL 3995391, at *1 (Tex. App.—Austin Aug. 30, 2024, pet. denied) (mem. op.).

worth of Davis's and Elizabeth's confidential and privileged communications. The trial court denied Davis's TCPA motion in a broad-form order. Davis timely filed this interlocutory appeal.

**STANDARD OF REVIEW**

"The [TCPA] protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The protection comes in the form of a motion to dismiss a suit that would stifle the defendant's exercise of those rights. *Id.*; *see also Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023) (providing that TCPA "protects speech on matters of public concern by authorizing courts to conduct an early and expedited review of the legal merit of claims that seek to stifle speech through the imposition of civil liability and damages"). The legislature has instructed that the act shall be "construed liberally to effectuate its purpose and intent fully." Tex. Civ. Prac. & Rem. Code § 27.011(b).

Courts review a motion to dismiss under the TCPA using a three-step process. *See Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021). First, the movant bears the initial burden to show the TCPA applies because the "legal action" against the movant is "based on or is in response to" its "exercise of the right of free speech, right to petition, or right of association." Tex. Civ. Prac. & Rem. Code § 27.003(a). A "legal action" includes "a lawsuit, cause of action, [or] petition . . . that requests legal, declaratory, or equitable relief." *Id.* § 27.001(6). If the movant meets its burden to show that the TCPA applies, the burden then shifts to the claimant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). If the claimant meets that burden, the court must still grant the motion if the movant "establishes an affirmative defense or other

7

grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d). Whether each party met its respective burdens under the TCPA is reviewed de novo. *O'Rourke v. Warren*, 673 S.W.3d 671, 679–80 (Tex. App.—Austin 2023, pet. denied). In determining "whether a legal action is subject to or should be dismissed under this chapter," we "shall consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). We review the pleadings and evidence in the light most favorable to the nonmovant. *O'Rourke*, 673 S.W.3d at 680.[5]

## DISCUSSION

In three issues, Davis claims that the trial court erred by denying Davis's TCPA motion because (1) the Graham Parties' fraud and breach-of-fiduciary-duty claims are based on or in response to Davis's rights to petition and of free speech, (2) the Graham Parties failed to establish a prima facie case in support of their claims, and (3) Davis established the attorney-immunity defense.

### 1. The Graham Parties' claims are not based on or in response to Davis's right to petition.

Davis argues that the Graham Parties' claims against him for breach of fiduciary duty and fraud implicate his right to petition. The Graham Parties' petition alleges that Davis (1) failed to disclose facts (and made affirmative misrepresentations) about Davis's representation of Elizabeth in the divorce and (2) investigated, developed, and pursued civil,

---

[5] This appeal arises under the 2019 version of the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code § 27.001 *et seq.* The TCPA was amended in 2023 while this appeal was pending. *See* Act of May 19, 2023, 88th Leg., R.S., ch. 804, § 1 (codified as an amendment to Tex. Civ. Prac. & Rem. Code § 27.010(a)). However, all references to the TCPA in this memorandum opinion are to the prior, 2019 version that applies to this dispute.

criminal, and family-law claims in his capacity as counsel to Elizabeth and in a manner adverse to Graham. Davis contends that the bases of the Graham Parties' claims are "communications" and "statements made or submitted by Davis in oral, written, and electronic form in the scope of Davis's representation of Elizabeth to investigate, develop, and pursue claims against Graham." He argues that "his legal representation of Elizabeth involved communications with Elizabeth and others about the claims and activity in the divorce and other legal proceedings, and communications relating to preparing and filing the divorce petition and other documents in ongoing legal proceedings." Because these "communications" pertain to a judicial proceeding, Davis argues, they implicate his right to petition and thus invoke the TCPA.

In order for a movant to invoke the TCPA, there must be a communication. A "communication" is broadly defined as "the making or submitting of a statement or document in any form or medium." *See* Tex. Civ. Prac. & Rem. Code § 27.001(1). "The phrase 'based on . . . or is in response to' dictates the nexus that must exist between the 'legal action' and the protected conduct under the TCPA." *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. denied). The phrase encompasses a "legal action" that is factually predicated on the alleged conduct that falls within the scope of the TCPA's definition of the exercise of the right of free speech, petition, or association. *Id.* Relevant here, the "exercise of the right to petition" includes "a communication in or pertaining to . . . a judicial proceeding." Tex. Civ. Prac. & Rem. Code § 27.001(4)(A). A "judicial proceeding" means an actual, existing judicial proceeding. *See Levatino v. Apple Tree Cafe Touring, Inc.*, 486 S.W.3d 724, 728 (Tex. App.—Dallas 2016, pet. denied). When, as is the case here, the defendant invokes free speech or the right to petition, the defendant must show that the communications at issue "provide the basis for the legal claims or the impetus for the dispute." *Welsh v. River Hollow Ass'n*, 654 S.W.3d

9

505, 510 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (quoting *ML Dev, LP v. Ross Dress for Less, Inc.*, 649 S.W.3d 623, 628–29 (Tex. App.—Houston [1st Dist.] 2022, pet. denied)).

Although Davis asserts that the portion of the Graham Parties' claims relating to Davis's failure to disclose his representation of Elizabeth to Graham is "based on or in response to" a communication pertaining to a judicial proceeding, that portion of the Graham Parties' claims alleges a *failure* to communicate in his failure to advise Graham of a conflict of interest which does not implicate TCPA protections. In *Hanna v. Williams*, we analyzed whether a law firm's failure to file a motion for summary judgment despite the client's instructions implicated the TCPA in the context of a legal malpractice case. 681 S.W.3d 416, 423 (Tex. App.—Austin 2023, pet. denied). We held that, to the extent claims are based on or in response to failures to communicate or act, "such failures do not implicate the TCPA." *Id.*; *see also Krasnicki v. Tactical Ent., LLC*, 583 S.W.3d 279, 284 (Tex. App.—Dallas 2019, pet. denied) ("The definition of 'communication' makes no reference to the withholding of a statement or document."). While *Hanna* analyzed this issue within the context of a legal malpractice suit, our sister courts have applied the same reasoning in breach-of-fiduciary-duty cases.[6] *See Rivas v. Lake Shore Harbour*

---

[6] We recognize that after this appeal was filed, in recent amendments to the TCPA, the legislature has expressly excluded from the TCPA "a legal malpractice claim brought by a client or former client." See Act of May 19, 2023, 88th Leg., R.S., ch. 804, § 1 (codified as an amendment to Tex. Civ. Prac. & Rem. Code § 27.010(a)). Davis argues in post-submission briefing that this amendment demonstrates that under the 2019 version of the statute applicable in this case, claims based on communications by a lawyer in his representative capacity are included within the scope of the TCPA's protection. As we do not consider this case to be a legal malpractice case, we do not find this argument relevant to our analysis. *See Aiken v. Hancock*, 115 S.W.3d 26, 28 (Tex. App.—San Antonio 2003, pet. denied) (providing that focus of breach-of-fiduciary-duty claim is whether attorney obtained improper benefit from representing client, while focus of legal malpractice claim is whether attorney adequately represented client).

*Cmty. Ass'n*, No. 01-22-00121-CV, 2023 WL 3063409, at \*8 (Tex. App.—Houston [1st Dist.] Apr. 25, 2023, pet. denied) (mem. op.) (holding that breach-of-fiduciary-duty claim was not "based on or in response to" protected communications but rather defendant's alleged conduct in failing to disclose known information). In particular, we find the facts in this case similar to those outlined in *Cweren v. Eureka Multifamily Grp., L.P.,* No. 01-21-00470-CV, 2023 WL 2977755, at \*5–8 (Tex. App.—Houston [1st Dist.] April 18, 2023, pet. denied) (mem. op.), and *Dernick v. Foley & Lardner LLP*, No. 01-22-00251-CV, 2024 WL 3941011, at \*8 (Tex. App.—Houston [1st Dist.] Aug. 27, 2024, no pet.) (mem. op.).

In *Cweren*, the trial court denied a TCPA motion to dismiss filed by an attorney and his law firm in response to claims brought against them by former clients. 2023 WL 2977755, at \*5–8. Initially, the law firm had filed suit against the former clients for outstanding legal fees relating to previous litigation. *Id.* at \*2. Viewing the suit for attorney's fees as retaliatory for the former clients' rejection of the law firm's payment demands, the former clients filed their own suit against the firm for claims including negligence, gross negligence, breach of fiduciary duty, and abuse of process. *Id.* at \*2–3. The former clients argued that the law firm had also retaliated against them by representing clients against one or more of the former clients' managed properties even though the law firm had previously represented those managed properties, which created a conflict of interest. *Id.* at \*2. Similar to the allegations here, the former clients alleged that the representation of the new clients constituted a conflict of interest and that the law firm "improperly and unlawfully us[ed] confidential client information provided by [the former clients] adversely to them, without their knowledge or consent[.]" *Id.* at \*3, \*6. The law firm filed a motion to dismiss under the TCPA, alleging that the former clients' claims were based on and in response to the law firm's exercise of its right to petition. *Id.* at \*4. In

11

affirming the trial court's denial of the motion to dismiss, the First Court of Appeals explained that the former clients' suit was not based on the law firm's conduct in a judicial proceeding (the initial suit by the law firm against the former clients for recovery of fees) but instead was based on the law firm's "failures to act, breaches of the standard of care, conduct, and misrepresentations, virtually all of which allegedly occurred before the [law firm's suit for recovery of attorney's fees] was filed." *Id.* at *14 (internal citations omitted). Accordingly, the court held that the former clients' breach-of-fiduciary-duty claims were not "predicated on [the law firm's] communications in a judicial proceeding," and thus the TCPA was not invoked. *Id.* at *15.

One year later, relying on its holding in *Cweren*, the First Court of Appeals issued a similar holding in *Dernick,* 2024 WL 3941011, at *8. In that case, the Dernicks brought suit for breach of fiduciary duty against their former law firm, Foley & Lardner, alleging that the firm owed them a fiduciary duty in connection with their previous attorney-client relationship and that the law firm breached this duty by representing the Dernicks' former company, Encore, in a manner adverse to the Dernicks' interests (the "adversary proceeding"). *Id.* at *4. The Dernicks alleged that Foley & Lardner breached its fiduciary duty through "engaging in conflicts, placing personal interests and the interests of Encore and other clients over the interests of the Dernicks, improperly using the Dernicks' confidences and confidential information, taking advantage of the Dernicks' trust, engaging in self-dealing, and making misrepresentations." *Id.* The Dernicks' petition more specifically alleged:

> [Foley] represented Encore and other clients in claims that were substantially related to [Foley's] representation of the Dernicks. [Foley] did so without adequately disclosing the conflict of interest to the Dernicks or obtaining their consent to engage in the joint representation. What is worse, [Foley] asserted

12

claims against the Dernicks for fraud and other purported malfeasance, based on allegations that [Foley] knew were false because it had represented the Dernicks in related transactions and disputes. [Foley] owed the Dernicks fiduciary duties to decline representation of Encore in the adversary proceeding and should have informed Encore that the allegations had no basis in fact. Instead, [Foley] conspired with Encore to manufacture bogus claims against its own former clients (the Dernicks) to advance the interests of other clients (like Encore) and itself by accumulating attorney's fees.

*Id.* The Dernicks sought attorneys' fees incurred in defending against the adversary proceeding, consequential damages for lost deals, management fees, salaries, ownership interests, and equitable fee forfeiture requesting disgorgement of improper benefits and fees. *Id.* Foley filed a motion to dismiss under the TCPA, arguing that the Dernicks' suit was based on and in response to Foley's exercise of the right to petition. *Id.* The trial court agreed and granted Foley's motion to dismiss. *Id.* On interlocutory appeal, the Dernicks argued that Foley could not identify a communication that would invoke the TCPA because the Dernicks' claims, including the breach-of-fiduciary-duty claim, were based not on or in response to communications made in a judicial proceeding but instead on failures to communicate or act. *Id.* at *5. Therefore, the Dernicks argued, their claims were not "factually predicated on protected communications." *Id.* The court sided with the Dernicks and reversed the judgment of the trial court, reasoning that the Dernicks' claims stemmed from Foley's *conduct* in representing Encore adverse to the Dernicks—specifically Foley's alleged failure to disclose the representation or obtain consent, and its alleged misuse of confidential information—rather than from communications made during the adversary proceeding itself. *Id.* at *8. The court held:

> We agree with the Dernicks that the TCPA is not implicated because their legal action is not based on or in response to [Foley's] communications in the adverse proceedings, but rather their alleged actions and conduct in representing Encore adverse to the Dernicks—Foley's alleged former clients—without disclosing such

13

representation or seeking their prior consent, and also based on [Foley's] alleged improper use of the Dernicks' confidential information.

*Id.*

Although the adversary proceeding was part of the sequence of events, the court determined the core issue was the alleged breach of fiduciary duty, which predated the proceeding. *Id.* The court emphasized that the Dernicks' claims were based on Foley's conduct pre-litigation, and thus it did not pertain to an actual, existing judicial proceeding. *Id.* at *12; *see Brenner v. Centurion Logistics LLC on Behalf of Centurion Pecos Terminal LLC*, No. 05-20-00308-CV, 2020 WL 7332847, at *7 (Tex. App.—Dallas Dec. 14, 2020, pet. denied) (mem. op.) ("To be an exercise of the right to petition under § 27.001(4)(A)(i), a communication must be in or pertain to an actual, existing judicial proceeding . . . [a] pre-litigation communication doesn't fit that definition, even if it provokes the subsequent litigation.").

Applying the reasoning in *Cweren* and *Foley & Lardner* here, and viewing the evidence in the light most favorable to the Graham Parties, *O'Rourke*, 673 S.W.3d at 680, we conclude that the basis for the Graham Parties' breach-of-fiduciary-duty claim is not the filing of the divorce petition or communications Davis made during the divorce proceedings but rather Davis's conduct in representing Elizabeth as a client allegedly adverse to Graham (who was either a current client or former client of Davis) and Davis's failure to advise Graham of this conflict of interest or obtain consent for such adverse representation.[7] These facts also form the

---

[7] To the extent Davis argues that some of the Graham Parties' claims are based on alleged "affirmative misrepresentations," we reject this argument, noting that "[s]imply alleging conduct that has a communication embedded within it does not create the relationship between the claim and the communication necessary to invoke the TCPA." *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 587 (Tex. App.—Fort Worth 2019, pet. denied); *see also ML Dev, LP v. Ross Dress for Less, Inc.*, 649 S.W.3d 623, 628 (Tex. App.—Houston [1st Dist.] 2022, pet. denied)

14

basis for the Graham Parties' claim of fraud by non-disclosure. And both the breach-of-fiduciary-duty and fraud-related claims are based on the allegation that Davis acquired confidential information about the Graham Parties through his years as the Westons' and Real Estate Entities' counsel and that he used that confidential information against Graham to his detriment in the divorce proceedings. Thus, because this portion of the Graham Parties' claims are based on Davis's *conduct* in representing Elizabeth in the divorce, we conclude that it does not meet the definition of "a communication in or pertaining to . . . a judicial proceeding." *See* Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(i). Accordingly, we conclude that this portion of the Graham Parties' claims in the underlying suit are not based on or in response to Davis's right to petition.

The nature of the allegations of failures to disclose in this case distinguish it from *Clouthier v. Brown*, No. 03-23-00777-CV, 2024 WL 3995384 (Tex. App.—Austin Aug. 30, 2024, no pet.) (mem. op.). In that case, this Court held that the TCPA applied to the plaintiff's claims that, in filing a motion, his attorney did not properly argue or adequately address his preferred grounds and failed to hire a private investigator to obtain affidavits that could have been included in the motion. *Id.* at *5. We concluded that the attorney's omissions to take actions or communicate in representing the client implicated the right to petition on behalf of that same client. *Id.* Here, the failures to communicate were subtly but significantly different. The Graham Parties do not complain about the contents of a petition, absence of content from a petition, or acts related to it but instead allege harm from Davis's continuing to represent them

(although alleged statements "may have accompanied" complained-of conduct, communications themselves did not "provide the basis for the legal claims or the impetus for suit" as required by TCPA).

15

while failing to disclose an adverse representation of Elizabeth against Graham. As the Graham Parties explain in their response to the motion to dismiss, "the claims asserted by Plaintiffs relate to Defendants' conduct and omissions as they concern Plaintiffs, not what Defendants communicated to Elizabeth."

This cause is similarly distinct from the Texas Supreme Court's opinion in *Youngkin v. Hines*, 546 S.W.3d 675 (Tex. 2018). In that case, Hines sued Youngkin, attorney for Hines's opponent in litigation, for entering into a Rule 11 agreement on behalf of Youngkin's clients while knowing they did not intend to comply, preparing a document that allowed them not to comply, and helping his clients wrongfully assert ownership of a property by filing a lawsuit. *Id*. at 679. The court held that the TCPA applied to Hines's claims against Youngkin because they implicated his rights to speak and petition. *Id*. at 680-81. While Hines's focus was on Youngkin's acts in speaking and petitioning for Youngkin's clients, the Graham Parties' claims focus on Davis's breach of duties owed to the Graham Parties based on their existing relationship.

We do not address the merits of the Graham Parties' allegations or how the exclusion of Davis's exercises of the right to petition might shape their proof of damages from the dual representation. We conclude only that Davis did not show that the Graham Parties' lawsuit complaining of his breach of fiduciary duty and fraud implicates the right to petition.

## 2. The Graham Parties' claims are not based on or in response to Davis's right of free speech.

The TCPA defines the exercise of the right of free speech as "a communication made in connection with a matter of public concern," and a "matter of public concern" is a statement or activity regarding a public official, a public figure, or another person "who has

16

drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity"; "a matter of political, social, or other interest to the community"; or "a subject of concern to the public." Tex. Civ. Prac. & Rem. Code § 27.001(3), (7). "To be a matter of public concern, a claim must have public relevance beyond the interests of the parties." *Morris v. Daniel*, 615 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quoting *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 136 (Tex. 2019)).

Davis argues that his communications made while counseling Elizabeth and while investigating, developing, and pursuing claims against Graham relate to matters of public concern—i.e., Graham's criminal, physical, and sexual abuse of Elizabeth. Davis claims that this would involve Elizabeth potentially going to the police to seek protection and possible prosecution. Davis further argues that Graham's alleged criminal, physical, and sexual abuse of Elizabeth, given Graham's "notorious" status as a "Forbes-listed billionaire," is an "issue[] of concern to the public." Statements to any third party, whether public or private, concerning sexual assault or the reporting thereof to the police can constitute a matter of public concern sufficient to constitute exercise of right of free speech under TCPA. *See Yu v. Koo*, 633 S.W.3d 712, 722 (Tex. App.—El Paso 2021, no pet.); *see also Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) (definition of "matter of public concern" includes "commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions."). It is undisputed that Elizabeth communicated with Davis before the divorce regarding various claims of abuse at the hands of Graham, including sexual abuse. While Elizabeth did not report the claims of abuse to law enforcement, she communicated these claims to Davis. Thus, Elizabeth's communications about Graham's alleged abuse may include a matter of public concern sufficient to implicate her right of free speech. However, the communications at issue belonged to

17

Elizabeth, not Davis. The Graham Parties' petition complained that Davis secretly—without disclosure to the Graham Parties—developed, pursued, and investigated Elizabeth's claims against Graham while at the same time representing the Graham Parties. The Graham Parties complain of the act of representing Elizabeth, period. Davis's TCPA motion to dismiss relies on Davis's communications made in the divorce petition he filed on behalf of Elizabeth. The Graham Parties complain of Davis's acts, omissions, and failures to act that he engaged in before he filed the divorce petition. The Graham Parties' claims are not based on or in response to Davis's exercise of his right of free speech and therefore do not invoke the TCPA.

Davis did not demonstrate that the TCPA applies to the Graham Parties' claims, and we overrule Davis's first issue on appeal. Because we conclude that Davis did not successfully invoke the TCPA, the trial court did not err in denying Davis's motion to dismiss. Because Davis did not carry the initial burden under the TCPA, the burden never shifted to the Graham Parties to present a prima facie case for the elements of their claims. We therefore need not consider Davis's remaining issues concerning establishment of a prima facie case or the attorney-immunity defense. *See* Tex. R. App. P. 47.1 (directing courts to write opinions as brief as practicable while addressing every issue raised and necessary to final disposition of appeal).

**CONCLUSION**

Having concluded that the TCPA does not apply to the Graham Parties' claims, we affirm the trial court's order denying Davis's motion to dismiss. We dismiss any pending motions as moot.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Crump

Affirmed on Motion for Rehearing

Filed:   April 30, 2026